**In the Interest of M.R., A Minor Child.**

No. 04–97–00846–CV.

Court of Appeals of Texas,
San Antonio.

April 22, 1998.

Rehearing Overruled May 8, 1998.

Kevin L. Collins, William T. Reece, Jr., Reece & Collins, San Antonio, for Appellant.

Barbara C. Slavin, San Antonio, Amber M. Liddell, Edward L. Pina & Associates, San Antonio, for Appellee.

Before HARDBERGER, C.J., and LÓPEZ and GREEN, JJ.

## OPINION

HARDBERGER, Chief Justice.

### INTRODUCTION

This is an appeal from an order changing the managing conservatorship of M.R. from his mother, Karen, to his father, Joe. Karen asserts that the trial court abused its discretion in refusing to consider evidence of Joe's violence against Karen. We agree.

### FACTUAL HISTORY AND PROCEDURAL BACKGROUND

In 1994, Karen gave birth to a baby boy. Several months later, Joe, who was not married to Karen, was adjudicated the child's father and ordered to pay child support. Karen was given managing conservatorship of the child, and Joe was awarded limited, supervised visitation.

Joe and Karen's relationship was not a smooth one. In 1997, after an especially bad incident with Karen, Joe requested that the custody of the child be modified and that he be named sole managing conservator. At trial, Karen attempted several times to introduce evidence that Joe had had recurring problems with alcohol and that he had committed violent acts against Karen in the two years preceding the suit. In particular, Karen attempted to introduce evidence of a

March 1996 incident that resulted in assault charges being filed against Joe. The trial court refused to hear this evidence.[1]

After a two-day trial, the court below granted Joe's request to modify custody.[2] The modified order gave Joe sole managing conservatorship and limited Karen to supervised visits and phone visitation. The trial court also ordered Karen to pay child support. Karen appeals the order in one point of error, claiming that the trial court abused its discretion in refusing to consider Joe's acts of violence against her in determining what was in their son's best interest.

## STANDARD OF REVIEW

■ In reviewing a custody modification proceeding, an appellate court may not reverse a decision of the trial judge unless there has been a clear abuse of that judge's discretion. An abuse of discretion occurs when the trial court's actions were arbitrary and unreasonable and without reference to any guiding rules or principles of law. *Villasenor v. Villasenor*, 911 S.W.2d 411, 419 (Tex.App.—San Antonio 1995, no writ).

## DISCUSSION

■ In making child custody determinations, the trial court is to be guided primarily by what is in the child's best interest. TEX. FAM.CODE ANN. art. 153.002 (Vernon 1996). A change in custody should be ordered only when the trier of fact is "convinced that the change will effect a positive improvement for the child." *Hogge v. Kimbrow*, 631 S.W.2d 603, 605 (Tex.App.—Beaumont 1982, no writ). To aid a trial court in determining the proper placement for a child, the Family Code mandates that any evidence of intentional use of violence by a "party against the party's spouse" be admitted if it was committed within the two years preceding the filing

of the custody suit or during the suit. TEX. FAM.CODE ANN. art. 153.004(a) (Vernon 1996). Karen claims that the trial court violated this mandate when it refused to consider evidence of the March 1996 assault.

Joe claims, alternatively, that error was not preserved, that article 153.004(a) does not apply, that the excluded evidence was prohibited by the rules of evidence, or that the trial judge, in fact, did consider the evidence. We disagree with each contention.

■ Joe claims that error was not properly preserved for review. He claims that, during the intervenors' closing arguments, the intervenors' attorney objected to the exclusion of the evidence under the wrong statute, Family Code art. 151.001. We find no merit to this contention. In the first place, the intervenors are not appealing, and what error they preserved is not relevant to this case.[3] In the second place, Karen's attorney objected when the trial court first ruled the evidence was inadmissible and each and every time thereafter that such a ruling was made. His objections are clear and repeatedly state that he was entitled to show a history of the relationship and that the violence was not "one-sided." His objections sufficiently preserve error for our consideration. *See* TEX.R. CIV. EVID. 103(a)(1) (specific ground for objection may be clear from record).

■ Next, Joe asserts that article 153.004(a) does not mandate admission of evidence of violence because that provision applies only to violence committed by one spouse against another. Joe and Karen were never married. We agree that this claim is supported by the plain language of subsection (a) of this provision, which states:

time he was four months until the time Karen lost custody, intervened in the suit, requesting custody. They have not appealed the decision below.

3. We note, however, for purposes of clarifying the record, that the intervenors cited the correct statute in argument; they cited the incorrect statute at their first objection to the exclusion of the evidence.

---

1. On appeal, Karen notes that Joe has since been convicted of assaulting her. However, this conviction is not properly in the record before this court, and we will not consider it in deciding the outcome of this appeal. Nor will we speculate on the effect the conviction might have on any future proceedings relating to the custody of the child.

2. The child's maternal grandparents, who were primarily responsible for his upbringing from the

In determining whether to appoint a party as a sole or joint managing conservator, the court shall consider evidence of the intentional use of abusive physical force by a party against the party's spouse or against any person younger than 18 years of age committed within a two-year period preceding the filing of the suit during the pendency of suit.

TEX. FAM.CODE ANN. art. 153.004(a) (Vernon 1996). However, we believe that the statute, when construed as a whole and with the rest of the family code, cannot be interpreted so narrowly. *See Porter v. State*, 806 S.W.2d 316, 319 (Tex.App.—San Antonio 1991, no writ) (court is to give rational construction to statute and enforce legislative intent, even if intent is not completely consistent with language of statute).

Article 153.004 is entitled "History of Domestic Violence." The title of the article does not limit the statute to cases of spousal abuse. While we recognize that the title is not controlling in statutory interpretation, we do find it instructive. Subsection (a), which mandates admission of violence against a spouse, applies to determinations of both sole and joint managing conservatorships. Subsection (b) of the statute applies to determinations of joint managing conservators, and it states that the court may not appoint joint managing conservators if "credible evidence" is presented of a history of child neglect or by "one *parent* directed against *the other parent.*" *Id.* at 153.004(b). Subsection (b) is not limited to spousal abuse.

It would obviously be impossible to apply subsection (b) if evidence of domestic violence committed by one unmarried parent against another unmarried parent were inadmissible. It also makes no sense to find that admission of such evidence is discretionary, since the subsection states that a court "may not" appoint joint managing conservators when such evidence is presented. If a trial judge exercised her hypothetical discretion in excluding credible evidence, would she not commit error if she then appointed joint managing conservators?

Subsection (c) of the statute controls decisions of whether to limit possession of a child by a parent who is appointed as a possessory conservator. In making this determination, the statute mandates that the court consider evidence of the commission of "family violence." Again, the evidence is not limited to cases of spousal abuse.

We can think of no reason why the state legislature would believe it appropriate to exclude evidence of abuse between unmarried parents when determining who is to be a child's sole managing conservator, but allow evidence of such abuse when determining whether to appoint joint managing conservators or whether to limit the access of a possessory conservator. Since the ultimate question in each instance is who is to have possession of the child, the same evidence would always be relevant.

Nor can we arrive at any principled justification for distinguishing between the children of unmarried parents and the children of married parents in determining what is in those children's best interest. Indeed, such a distinction would almost certainly violate the state and federal constitutional mandates of equal protection. *See* U.S. CONST. amend. XIV; Tex. Const. art. I, § 3; *see also Barshop v. Medina Underground Water Cons. Dist.*, 925 S.W.2d 618, 629 (Tex.1996) (when possible, statutes should be interpreted to avoid constitutional infirmities). Laws that classify illegitimate children receive intermediate scrutiny: they must meet an important state interest. *See Dickson v. Simpson*, 807 S.W.2d 726, 727 (Tex.1991) (statutory classifications based on legitimacy are suspect and must be substantially related to important governmental interest). We can think of no state interest that is advanced by giving the children of married parents the opportunity for a safer home environment than the children of unmarried parents.

The provisions of the statute must, if possible, be harmonized. *See City of Amarillo v. Railroad Com'n of Texas*, 894 S.W.2d 491, 494 (Tex.App.—Austin 1995, writ denied) (courts will not give one provision meaning that conflicts with other provisions). In addition, the statute cannot be construed so as to lead to absurd results. *Barshop*, 925 S.W.2d at 629. Because the statute is found in a chapter of the code that seeks to determine what is in a child's best interest (not

just *some children's* best interest), and because the provisions, taken together, evidence a legislative mandate that domestic violence, generally, be a consideration in custody determinations, we hold that subsection (a) requires that evidence of violence committed by one of the child's parents against the other parent be admitted.

Joe next submits that the excluded evidence was prohibited by Texas Rule of Evidence 609. That rule provides:

For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

Tex. R. Evid. 609(a).

We do not believe this rule is relevant. It exists to establish when and within what parameters a prior conviction may be introduced. It does not *require* a conviction in order to admit some testimony. Karen was not trying to introduce evidence of a conviction; thus Rule 609 is not relevant.

■ In addition, the Family Code itself does not require a conviction in order to introduce evidence of family violence. Instead, it requires that the evidence be "credible." Of course, the Family Code mandates that, in domestic relations cases, the Texas Rules of Evidence be followed. *See* Tex. Fam.Code Ann. art. 104.001 (Vernon 1996). However, this evidence was admissible under the rules. Rule 404(b) of the rules allows evidence of "other" wrongs or acts to be admitted when they are not admitted to prove character in order to show that that person acted in conformity with the prior conduct. Tex.R. Evid. 404(b). Here, the Family Code mandates that such evidence be admitted for another purpose—in order to establish what is in the best interest of the child. Karen was not trying to prove that Joe committed acts in conformity with a prior act of violence. Instead, she was trying to establish that Joe's violent act made it less in the best interest of the child that he be named sole managing conservator. *See Rosendorf v. Blackmon,* 800 S.W.2d 377, 380 (Tex.App.—Corpus Christi 1990, no writ) (evidence of father's abuse of mother relevant to custody determination).

■ Finally, Joe argues that, although the trial judge initially refused to hear evidence of a specific act of violence by Joe against Karen, she later admitted such testimony. We disagree with this characterization of a record that indicates repeated rulings that favored one party over the other.

When Karen's attorney first attempted to raise the March 1996 incident in which Joe allegedly struck Karen, Joe's attorney objected. The basis of the objection was that a charge was currently pending on that incident and, because there was no final conviction, the evidence was "completely inadmissible." The court sustained the objection then and again almost immediately thereafter, when the intervenors also complained. By this court's count, the trial judge ruled to exclude evidence of this particular incident, over objections, eleven times. This was clear error.

Joe claims that any error was cured when the trial judge, during questioning by Karen's attorney, Kevin Collins, allowed Joe's expert witness, Robin Walton, to testify to the incident, over the objections of Amber Liddell, Joe's attorney. We disagree. During Walton's testimony, the following exchange occurred:

MR. COLLINS: And amongst the, as you call it, stack of arrest reports, I hope you have the one where—in March of 1996, very recent, where Joe Soto was arrested for striking [Karen]. Do you have that in your stack of reports?

MS. LIDDELL: Your Honor, I would object. Our previous objections were sustained that this is not a final conviction and is inadmissible.

THE COURT: Sustained.

MS. LIDDELL: Thank you, Your Honor.

MR. COLLINS: Your Honor, I have to—

THE COURT: I don't need an argument.

During the same cross examination, the following occurred:

MS. WALTON: I have not had any allegations from your client that he has an alcohol problem.

MR. COLLINS: How about an assault problem, violent tendencies problem.

MS. LIDDELL: Your Honor, I would object. Again, we have been over and over this point. The Court has routinely sustained my objections. . . .

THE COURT: I will ask whether you have an opinion about that, that Ms. Ruiz has a violence problem.

MS. WALTON: Yes. I believe Ms. Ruiz has a violent—has a violence problem. And I believe that Mr. Soto has been caught in violence with Ms. Ruiz, when she became violent with him, in order to protect himself and defend himself.

This testimony was clearly limited to avoid discussion of a specific incident and, so limited, cannot be considered as "evidence of the intentional use of abusive physical force," as contemplated by the rule.

We also note that, at one point, in the middle of a somewhat confusing exchange between counsel and attorneys, the intervenors' attorney was allowed to elicit from Joe that an assault charge was pending against him. However, this testimony was severely circumscribed. The intervenors' counsel was not permitted to question Joe about whether Karen was hospitalized as a result of the incident. The basis for this holding was that such testimony would assume facts not in evidence. However, Joe's testimony would have been some evidence on that point.

We recognize that in the continuing debate over this evidence, mention was made of the incident in question. However, we believe it is clear from the record that the trial court believed that, because Joe had not been convicted of assault, it could not hear evidence regarding the March incident. Believing the evidence inadmissible, the trial court could not have considered it in making its final custody determination. Moreover, there is fundamental unfairness in the difference between the extremely limited way this evidence was heard, if it was heard at all, and the great detail allowed in relating Karen's bad acts. Witnesses were allowed to testify, at length to the following:

1. That Karen led police on a high-speed car chase, while the child was in the car. The testimony included the fact that Karen bit police officers to get their arms out of her car. There was a police report, but nothing in the record indicates Karen was convicted of a crime as a result of this incident.

2. That, after an argument with Joe, Karen stopped their vehicle on Highway 1604 and, with the child, began crossing the highway back and forth. A police report was filed, but there is no evidence of a conviction.

3. That Karen committed numerous instances of phone harassment, for which she was eventually placed under a protective order. The trial court held that protective orders were analogous to criminal convictions and were, therefore, admissible.

4. That Karen drove to Joe's sister's home and stood in the yard, yelling obscenities.

5. That Karen had been admitted to a psychiatric hospital.[4]

6. That Karen had been arrested "20 or 29 times."

7. That Karen had threatened to "go underground"with the child.

At one point, Karen's counsel asked, "Your Honor, am I to understand that they can go into our client's arrest record, and we can't go into their client's arrest record?" The trial judge responded, "That is correct."[5]

4. The trial court sustained an objection when Karen's attorney attempted to elicit testimony from Joe's ex-wife that Joe had been a patient in a mental hospital, relying on the physician-client privilege. Later, Joe alluded to time spent in psychiatric hospital.

5. The apparent reasoning behind this statement was that, as an expert, Walton could testify as to allegations made to her by Joe and against Karen. This would include allegations of arrests, whether or not they resulted in convictions. Under the same reasoning, Walton was allowed to testify that, according to Karen, Joe had been arrested for sexual assault on a child (a charge that no one could confirm) and a DWI and that he had had a car accident where police reported that he smelled like alcohol. This evidence came

When the intervenors' attorney attempted to question Joe about any violent tendencies he might have, the trial court stated, "Please don't go into these things. We are talking about the best interest of the child." We believe these statements, only two of many, evidence that the proceedings unfairly favored Joe's efforts to obtain custody. We therefore reverse and remand this case for another trial. We find that the error of excluding a full account of Joe's violence against Karen was harmful because a trial court is mandated by the Family Code to take such evidence into account. A judgment that does not take this evidence into account, then, is an improper judgment. TEX.R.APP. P. 44.1(a) (no error shall form basis for reversal unless the error probably caused rendition of improper judgment). For this reason, we must reverse and remand for another trial.

### CONCLUSION

Although we find a custody judgment that is not based on full consideration of domestic violence to be improper, we make no comment whatsoever on the suitability of either parent in this case or on the correctness of the specific result. We merely hold that, in the best interest of the child, a trial judge making a custody determination must provide all parties to the suit a fair and impartial hearing and must consider credible evidence of violence committed by one parent against the other.

in under the court's ruling that the expert could testify about what information she based her opinions. However, Walton was not allowed to testify as to what she knew about the March 1996 incident because, according to the court, there was no final conviction.