No. 04-99-00113-CV


In the Interest of A.B.C., K.C.C. and X.A.C., Children


From the 49th Judicial District Court, Webb County, Texas

Trial Court No. 37,161

Honorable Juan Gallardo, Judge Presiding


OPINION ON REHEARING


Opinion by: Alma L. López, Justice


Sitting: Tom Rickhoff, Justice

 Alma L. López, Justice

 Paul W. Green, Justice


Delivered and Filed: January 31, 2001


AFFIRMED IN PART; REVERSED AND REMANDED IN PART


 On September 6, 2000, this court issued an opinion disposing of this appeal. See In the
Interest of A.B.C., K.C.C. and X.A.C., No. 04-99-00113-CV, 2000 WL 1258375 (Tex. App.-San
Antonio Sept. 6, 2000, no pet.). Therein, we stated that the appellant, Xavier Cantu, had waived his
opportunity to complain about child support for a two-year time period by failing to appeal the trial
court's order entered on July 28, 1998. On October 5, 2000, Xavier moved for rehearing in this
appeal and asked for reconsideration of his issue concerning child support for the two-year time
period. Xavier relied on this court's opinion in Appeal No. 04-99-00113-CV, wherein we stated that
the order directing Xavier to pay child support for the two years-the order entered on July 28,
1998-was not a final appealable judgment because Xavier's motion to modify child custody had not
been determined. See In the Interest of A.B.C., K.C.C., and X.A.C., No. 04-97-00061-CV, 1997
WL 684970 (Tex. App.-San Antonio Nov. 5, 1997, no pet.), at *2. In his motion for rehearing,
Xavier contended that the order directing him to pay child support for the two years did not become
final until the trial court ruled on his motion to modify-the order at issue here. Xavier is correct. We
grant the motion for rehearing. This court's opinion and judgment dated September 6, 2000 are
withdrawn, and this opinion and judgment are substituted. The substituted opinion has been modified
only in its consideration of the two-year time period; the opinion remains the same in all other
respects.

Factual Background

 Xavier and his former wife, Anna, were divorced on October 31, 1988. Pursuant to the final
decree of divorce, Anna was appointed as sole managing conservator of the couple's three
children-A.B.C., K.C.C. and X.A.C. Xavier was appointed as possessory conservator of the
children, and ordered to pay Anna child support. Over the next few years, Anna and Xavier engaged
in what can be characterized as protracted conflict over the care and custody of their three children,
dragging each other in and out of the courtroom on countless occasions. Ultimately, the trial court
issued an order on July 8, 1992 that awarded Xavier temporary custody of the children. Xavier
obtained possession of the children and stopped paying Anna child support although the court's order
did not alter Xavier's obligation to pay child support.

 Over the course of the next two years, the couple engaged in additional legal proceedings
involving the children. Finally, the trial judge entered an order on November 15, 1994 appointing
Anna as sole managing conservator of A.B.C. and K.C.C., and appointing Anna and Xavier as joint
managing conservators of the couple's son, X.A.C. Subsequently, the Office of the Attorney General
moved for enforcement of Xavier's child support obligations. On December 12, 1996, the trial court
entered an order to enforce Xavier's obligations in the amount of $36,182 ($31,840 in unpaid child
support, plus $4,342 in accumulated interest) as of November 30, 1996. Xavier then moved for sole
custody of the children. On April 20, 1999, the trial court issued another order designating Anna as
sole managing conservator of the son, and determining that Xavier owed $42,514.00 in arrearages
as of January 15, 1999. Xavier appeals that order in this appeal.

Arrearages

 In his first four issues, Xavier complains about the trial court's order in regard to child support
arrearages. Specifically, Xavier complains that the trial court ordered him to pay arrearages for a time
period when he, rather than Anna, had possession of the couple's three children. To support this
argument, Xavier relies on an order dated July 8, 1992, that gave Xavier temporary custody of the
children. Xavier contends that this order negated his duty to pay child support because the order
made Anna a non-custodial parent. Because section 153.132 of the family code gives only the
managing conservator the right to receive child support, Xavier contends that the trial court abused
its discretion by requiring him to pay arrearages for a two-year time period when he possessed the
children. Xavier also complains that the trial court abused its discretion by awarding Anna arrearages
because Anna did not request arrearages in her pleadings. 

 The court of appeals reviews a complaint about a child support order using an abuse of
discretion standard of review. See Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). A trial
court abuses its discretion if it acts without any reference to any guiding rules or principles. Id.
Absent an abuse of discretion, a trial court's child support order will not be disturbed on appeal. Id. 

 In this case, the original decree of divorce appointed Anna as sole managing conservator of
the three children and ordered Xavier to pay Anna $800.00 per month in child support. Although
Xavier complains that he was not required to pay child support for two years, the July 8, 1992 order
awarding him temporary custody of the children does not alter the trial court's earlier order
concerning child support. Instead, the order states that "[t]he Court finds that it is in the best
interests [sic] of the children . . . that the status quo temporarily with regards to the custody of the
children be maintained by virtue of the fact that there is some question as to potential and emotional
harm which may befall the children if they are returned to their natural mother, at this time." Notably,
the order does not mention child support. Although the reporter's record of the proceedings that
resulted in this order indicates that the trial court intended the order to extend Xavier's summer
possession of the children to permit time to submit briefs about whether the trial court could interview
the children, and not to serve as a permanent custody arrangement, the order nevertheless remained
in effect until November 15, 1994 when the trial court appointed Anna as sole managing conservator
of A.B.C. and K.C.C., and named the parties as joint managing conservators of X.A.C. At that point,
the trial court's order directed that Xavier pay Anna $800.00 per month to support A.B.C. and
K.C.C.

 Despite the order, Xavier did not pay child support. The Attorney General's Office then
moved for enforcement of the child support order. Xavier responded he was entitled to an offset for
the period of time he possessed the children. Subsequently, the trial court entered an order to enforce
Xavier's child support obligation. Therein, the trial court confirmed the amount of Xavier's
arrearages as $36,182.40 ($31,840.00 in unpaid child support and $4,342.40 in accumulated interest)
as of November 30, 1996, and held Xavier in contempt of court for failing to pay support on June
1, 1996 and July 1, 1996. The order was signed on December 12, 1996, and thus necessarily included
the time period of possession that Xavier complains about in this appeal. Thus, we must determine
whether the trial judge erred in including child support for the two-year time period in the arrearage-figure.

 Section 157.261 and 157.263 of the Family Code provide for the reduction of unpaid child
support, or arrearages, to a money judgment. Tex. Fam. Code Ann. § 157.261 (Vernon Supp.
2000) (stating untimely child support payment constitutes final judgment); id. § 157.263 (Vernon
1996) (directing trial court to confirm child support arrearages and render money judgment). Section
157.262, however, prohibits the trial court from reducing or modifying the amount of child support
arrearages in a contempt proceeding or in rendering a money judgment. Id. § 157.262(a)(Vernon
1996). Nevertheless, the Code provides for an offset under limited circumstances. Id. § 157.262(b).
Specifically, the Code provides for an affirmative defense: (1) that the obligee voluntarily relinquished
to the obligor actual possession and control of a child, id. § 157.008(a); (2) that the obligor lacked
the ability to provide support in the amount ordered, id. § 157.008(c)(1); (3) that the obligor lacked
property that could be sold, mortgaged, or otherwise pledged to raise the funds needed, id. §
157.008(c)(2); (4) that the obligor attempted unsuccessfully to borrow the funds needed, id. §
157.008(c)(3); or (5) that the obligor knew of no source from which the money could have been
borrowed or legally obtained, id. § 157.008(c)(4). In this case, the record is clear that the trial judge
considered these circumstances.

 In the hearing during which the trial judge considered Xavier's request for an offset, the
following colloquy occurred:

 THE COURT: Doesn't the Code now provide that even when there's an order
providing for the payment of child support that if the party who owes the child
support actually has possession of the children, that they're entitled to a credit for that
period of time?


 THE STATE'S ATTORNEY: . . . This judgment amount can be reduced if he shows
he had actual possession of the children, they were voluntarily relinquished by the
other party. No evidence was put on that he actually had possession of the children.


 THE COURT: He offers the evidence from the hearing held in July of '94 in front of
Judge Dominguez in which the allegation is made, I recall reading it, that he had
possession of the children for some period of time. He also offers evidence that there
was a motion for Habeas Corpus filed by Mrs. Cantu, obviously asking for possession,
which the court denied. There wouldn't be any reason for her to ask for possession
if Mr. Cantu - unless Mr. Cantu has possession.


 THE STATE'S ATTORNEY: Even if Mr. Cantu had possession during these
periods, first of all, it was not a voluntary relinquishment. And, secondly, that does
not dissipate all the arrears. There is still the issue of April of this year where no child
support has been paid.


 THE COURT: What evidence is there in the record that it was not a voluntary
relinquishment, anything?


 THE STATE'S ATTORNEY: I don't think that there is any evidence that it's
voluntary, no.


 THE COURT: Either way, is there any evidence on the subject of whether or not it's
voluntary?


 THE STATE'S ATTORNEY: I don't think there's any evidence. I heard no evidence
that there was a voluntary relinquishment. I think the burden to prove this affirmative
defense is on the other side. And if they're not showing us it's a voluntary
relinquishment, then we haven't been shown anything. I think the Habeas Corpus
shows that it was not a voluntary relinquishment.

 . . . .


 THE COURT: [to Xaxier's attorney referring to the State's attorney] . . . Do you
concede that she's correct that there are periods of time he failed to pay? There's no
evidence of inability to pay here presented today.

 . . . .


 XAVIER'S ATTORNEY: No evidence of inability.

 . . . .


 THE COURT: . . . On 157.008, the affirmative defense for enforcement of child
support, "It is the obligor who has to plead and prove the defense, which includes the
elements of one, voluntary relinquish actual [sic] possession. Voluntary
relinquishment must have been for time in excess of any Court ordered periods of
possession and actual support must have been paid by the obligor." [quoting Tex.
Fam. Code § 157.008(b)].

 The Movant's Exhibit 1 [the Attorney General], which is the summary of the
Clerk's file showing payments, "Payment History Report," Webb County Child
Support, shows a gap from - beginning the day after the 5-19-92 payment and
running until the 7-19-94 payment that there was no child support paid. So the
defense of credit would not apply to that period of time. The record shows that the
last payment was made on 3-21 of '96. So there would be no credit for the time
period since that payment, which would have been 3-21 of '96. There's no evidence
to support that he made actual support payments during at least those periods. 


Thus, the record shows that the trial judge considered the circumstances under which he could reduce
the amount of arrearages and determined that he had no discretion to do so. The trial judge was
correct in this determination.

 No evidence exists that Anna voluntarily relinquished the children to Xavier during the two-year time period. Id. § 157.008(a). Instead, the record indicates that Anna sought possession during
the time period. No evidence exists that Xavier lacked the ability to provide support in the amount
ordered, id. § 157.008(c)(1); that Xavier lacked property that could be sold, mortgaged, or otherwise
pledged to raise the funds needed, id. § 157.008(c)(2); that Xavier attempted unsuccessfully to
borrow the funds needed, id. § 157.008(c)(3); or, that Xavier knew of no source from which the
money could have been borrowed or legally obtained, id. § 157.008(c)(4). The evidence indicates
only that Xavier failed to pay. Thus, Xavier did not show that he was entitled to the affirmative
defense under section 157.262. Without proving up an affirmative defense, the trial judge had no
authority to reduce the amount of Xavier's arrearages. As a result, the trial judge did not abuse his
discretion by including the two-year period of time in the arrearage order. Accordingly, we overrule
Xavier's issues regarding arrearages for the two-year time period.

 Although the trial court did not abuse its discretion in ordering Xavier to pay arrearages for
the two-year time period, the trial court erred in computing the amount of arrearages. Xavier
contends, and the Attorney General concedes, that the arrearage figure does not account for the
emancipation of the couple's two daughters which occurred during the pendency of the Attorney
General's enforcement proceedings. The trial court abuses its discretion if it awards child support
for an emancipated child. Accordingly, we sustain Xavier's issue concerning the trial court's failure
to consider the emancipation of his daughters in calculating the arrearage figure and remand the cause
to the trial court for recalculation.

 Xavier also complains that Anna did not request arrearages in her pleading, but the Attorney
General's motion for enforcement states that "[t]he Court should confirm and enter judgment for the
child support arrearage and accrued interest." The motion asked for relief pursuant to Chapter 231
of the family code which provides for the assignment of child support in return for the receipt of
financial assistance under Aid to Families with Dependent Children Program. See Tex. Fam. Code
Ann. § 231.104 (Vernon Supp. 2000). As a result, the trial court should have named the Office of
the Attorney General as the recipient of the arrearages. Nonetheless, the Attorney General can file
a Notice of Payee under section 231.105 of the family code to ensure that arrearage payments are
transmitted to that agency. See id. § 231.105. 

Child Custody

 Prior to the entry of the trial court's judgment, Xavier moved to modify the parent-child
relationship of his son. Specifically, Xavier sought sole custody of X.A.C. Instead of granting Xavier
custody, the trial court appointed Anna as sole managing conservator. In his fifth, sixth, and seventh
issues, Xavier argues that the trial court erred by removing him as joint managing conservator and
appointing Anna as sole managing conservator. Xavier argues that no evidence exists that the change
would be in the best interest of his child. Xavier further complains that the trial court did not order
visitation consistent with the standard possession order contained within the family code.

 Section 153.002 of the family code directs that the best interest of the child shall always be
the primary consideration in determining the issues of conservatorship and possession of and access
to a child. See Tex. Fam. Code Ann. § 153.002 (Vernon 1996). The trial court has broad discretion
in determining what is in the best interest of the child. See In the Interest of M.R., 975 S.W.2d 51,
53 (Tex. App.-San Antonio 1998, pet. denied); Villaseñor v. Villaseñor, 911 S.W.2d 411, 419 (Tex.
App.-San Antonio 1995, no pet.). An appellate court will not reverse the trial court's decision
regarding custody absent a clear abuse of discretion. See In the Interest of M.R., 975 S.W.2d at 53:
Villaseñor, 911 S.W.2d at 419.

 Here, Xavier argues that overwhelming evidence exists that the best interest of his son is not
served by placing his son in Anna's custody. Xavier relies on his son's poor school attendance,
declining grades, disciplinary problems, and his arrest for possession of marijuana, all ostensibly
occurring while X.A.C. was in Anna's custody. Despite this argument, sufficient evidence exists to
show that placing the boy in Anna's custody was in the child's best interest.

 The joint custody order entered on November 15, 1994, required the son to live with his
father for six months out of the year, and to live with his mother during the other six months.
Although Xavier attempted to show that his son's problems stemmed from the mother's custody and
lack of parenting skills, the evidence indicates that the boy's difficulties more likely resulted from the
joint custody arrangement. Xavier himself testified that his son had experienced problems since the
joint custody arrangement was implemented. Xavier stated that his son had lost his self-esteem, lost
his desire to excel in school, experienced a decline in his academics, and was caught at school with
marijuana. Xavier attributed these difficulties to joint custody. Certainly, such difficulties indicate
that forcing a child to change households every six months is not in the child's best interest and
require the trial judge to determine which parent should have primary custody of the child.

 Although other evidence indicates that placing the boy in the custody of his mother was
proper, the boy's testimony is perhaps most persuasive. Prior to the custody hearing, the Cantu's son
filed an affidavit of preference wherein he indicated that he preferred to live with his mother. During
the hearing, X.A.C. stated that he had previously completed an affidavit to indicate a desire to live
with his father. He explained, however, that he had completed that affidavit because his father told
him that if he was in his mother's custody, his dad would be forced to pay his mother a lot of child
support, leaving no money for a college education. The son told the judge that he had seen his father
hit his sisters and brother. The son explained that when his father experienced stress, he would push
him for little reason, and that his father had hit him with a hanger years before. He further stated that
his mother did not hit him, and that despite the financial advantages of living with his father, he
wanted to live with his mother. Under such circumstances, designating Anna as sole managing
conservator is not an abuse of discretion.

 As for Xavier's complaint about the trial judge's order concerning visitation, the trial court
is afforded wide discretion in determining issues of child visitation. See Capello v. Capello, 922
S.W.2d 218, 219 (Tex. App.-San Antonio 1996, no pet.). The trial court's decision will not be
overturned absent an abuse of discretion. Id. Here, Xavier complains that the visitation order does
not give him the right to visitation on Wednesdays, beginning at the time school is regularly dismissed
and ending at the time school resumes, as he elected under section 153.312 of the family code.
Instead, the order gives Xavier the right of visitation on Wednesdays, beginning at 6:00 p.m. and
ending at 8:00 p.m. Section 153.312 provides that the possessory conservator shall have the right
of possession:

 on Wednesdays of each week during the regular school term beginning at 6 p.m. and
ending at 8 p.m., or, at the possessory conservator's election made before or at the
time of the rendition of the original or modification order, and as specified in the
original or modification order, beginning at the time the child's school is regularly
dismissed and ending at the time the child's school resumes, unless the court finds
that visitation under this subdivision is not in the best interest of the child.


Tex. Fam. Code Ann. § 153.312 (Vernon Supp. 2000). Notably, the right to visitation on
Wednesdays "beginning at the time the child's school is regularly dismissed and ending at the time
the child's school resumes" is conditional-i.e., unless the court finds that the extra hours of visitation
are not in the best interest of the child. Although the modification order does not contain an explicit
finding to this effect, the order clearly reflects the trial judge's consideration of the child's best
interest. That consideration is reflected in the change of the standard visitation order as it applies to
weekend visitation. There, the trial judge changed the standard visitation order from:

 "on weekends beginning at 6 p.m. on the first, third, and fifth Friday of each month
and ending at 6 p.m. on the following Sunday,"


to:

 "on weekends beginning at 6 p.m. on the first, third, and fifth Friday of each month
and ending the following Monday at [the] time school starts by delivering child to
school. This does not apply to Monday holidays. Return on Sunday at 6:00 p.m.
for days of Monday holidays."


This change reflects a desire to ensure the son's opportunity for academic achievement was not
disrupted during the school week by changing households, but to ensure that the possessory
conservator received the same amount of visitation time provided by the standard possession order.
Under these circumstances, not giving Xavier the right of possession on Wednesdays, beginning at
the time his son was dismissed from school until school resumed the following morning, was not an
abuse of discretion. We overrule Xavier's issues contesting custody and visitation.

Conclusion

 Having sustained Xavier's issue concerning the trial court's failure to consider the
emancipation of his daughters in calculating the arrearage figure, we remand the cause to the trial
court for recalculation. Having overruled each of Xavier's other issues, we affirm the judgment in
all other respects.

 Alma L. López, Justice

DO NOT PUBLISH