11th
Court of Appeals

                                                                  Eastland,
Texas

                                                             Memorandum
Opinion

 

In the
Interest of K.J.L., III and C.A.L.

No. 11-03-00091-CV B
Appeal from Nolan County

.

Victoria M. (Alvarado) Lee (Vickie) appeals from
the trial court=s
modification order that removed her and her former husband, Kenneth Jack Lee,
Jr. (Jackie) as joint managing conservators of one of their children and
designated her as possessory conservator and Jackie
as sole managing conservator of that child. 
The order also established that Jackie was the father of another child,
born after the parties=
divorce, and designated Vickie as the possessory
conservator of that child and Jackie as the child=s
sole managing conservator.  Vickie
contends in four issues that (1) Aeducational
neglect@ in
itself is not a legally sufficient basis upon which to modify or establish conservatorship; (2) the evidence presented was not
factually sufficient to support a finding of Aeducational
neglect,@ and the
modification of conservatorship was therefore an
abuse of discretion by the trial court; (3) the trial court erred by failing to
investigate charges of domestic violence against Jackie; and (4) the trial
court erred by admitting substantial evidence of religious belief, contrary to
the U.S. and Texas Constitutions.  We affirm.








Vickie insists in Issue Nos. 1 and 2 that Aeducational neglect@ in itself is not a legally sufficient
basis upon which to modify or establish conservatorship
and that the evidence presented was not factually sufficient to support a
finding of Aeducational
neglect@ so that
the modification of conservatorship was an abuse of
discretion by the trial court.  These two
issues as presented by Vickie are based upon the unstated assumption that the
trial court made its determinations as to conservatorship
based solely or in part upon the basis of Aeducational
neglect.@  With respect to one child, the court found
only that there had been a material and substantial change of circumstances as
to that child since the rendition of its prior order and that the modification
of the order was in the best interest of the child.  With respect to the child for whom paternity
was established in the order, the court found that Vickie did not choose to
encourage or accept a positive relationship between the child and Jackie and
that it was in the best interest of both children for Jackie to be designated
managing conservator.  Although the trial
court varied standard visitation terms regarding Vickie returning the children
to school at the end of her period of possession, finding that she had
established a pattern of conduct that neglected the educational welfare of the
children, the court made no finding that indicated its findings regarding conservatorship were based on the issue of Aeducational neglect,@ either by itself or in connection with
other issues.

While Vickie does not assert specifically in any
issue that the trial court abused its discretion in its findings because the
evidence is legally or factually insufficient to support the trial court=s findings regarding the best interest
of the children, she appears to raise this issue in her argument.  We will therefore consider whether the trial
court abused its discretion because the evidence is legally and factually
insufficient to support the trial court=s
findings.  When reviewing a no-evidence
point, we must view the evidence in a light that tends to support the finding
of the disputed fact and disregard all evidence and inferences to the contrary.  Lenz v. Lenz, 79 S.W.3d 10, 13
(Tex.2002).  A court may modify the terms
and conditions of a joint managing conservatorship if
the modification would be in the best interest of the child and if the
circumstances of the child or one or both of the conservators have materially
and substantially changed since the rendition of the order.  TEX. FAM. CODE ANN. '
156.101(1) (Vernon Supp. 2004-2005).  

With respect to our review of the trial court=s establishment of Jackie as father and
managing conservator of the child not mentioned in the parties= divorce decree, we note that the trial
court is given wide latitude in determining the best interest of the child when
appointing a parent as a managing conservator. 
The judgment of the trial court will be reversed only when it appears
from the record as a whole that the court has abused its discretion.  Gillespie v. Gillespie, 644 S.W.2d
449, 451 (Tex.1982).  

An assertion that the evidence is Ainsufficient@
to support a fact finding means that the evidence supporting the finding is so
weak or the evidence to the contrary is so overwhelming that the finding should
be set aside and a new trial ordered.  Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the
evidence in making this determination.  Maritime
Overseas Corporation v. Ellis, 971 S.W.2d 402, 406-07 (Tex.1998).








Jackie and Vickie were divorced in 1994, and both
were named joint managing conservators of one child.  Robert Leslie Clark, a police officer for the
City of Sweetwater, testified that he was dispatched to Jackie=s residence in December 2000.  He said that Vickie=s
SUV was in the driveway, that she had the child with her, that it was Jackie=s weekend to have the child, but that
Vickie had some reservations about it. 
Officer Clark could not remember what the reservations were, which in his
mind signified that he felt the child would not be in any kind of
life-threatening situation, emotional trauma, or distress if left with the
father.  He did say that the child was
crying and that he believed Vickie said that the child did not want to stay.  He said that Vickie released the child to
Jackie after consultation with her brother and father, whom he had called to
the scene.  Officer Clark testified
concerning another call regarding transfer of possession but could remember few
details.  With respect to the first
incident, Vickie testified that the younger child called her house while
visiting with Jackie during his time of possession.  She said that, after several calls, Jackie
allowed her to come over.  She indicated
that, when Jackie opened the door, the child ran out of the house, jumped on
her, and was crying saying she wanted to go home.  Vickie testified that she said:  AWhy
do you want her here like this? Why? Why don=t
you do what is best for her?@  She said that, when Jackie said:  AWell,
Vickie, I=m just
tired of this@ and
threw up his hands, she went to get in her car to take the child home, but
Jackie removed the keys.      

The children of Jackie and Vickie, at the time of
the hearing, were ages twelve and six, while another child of hers, but not
Jackie=s child,
was a baby at the time of trial.  Vickie
acknowledged that she and all three children begin the night in the same bed
but that she usually awoke and went to the couch after putting them to bed.  She said she wished the children would sleep
in their own beds.  She stated that this
started with Jackie having the older child sleep in his bed, although she
acknowledged that the younger child had slept with her since her birth.

Vickie acknowledged that absence from school and
tardiness at school had been a problem with both children.  She said her daughter was not a morning
person.  She stated that she did not make
the children go to school when they were nauseated or, as to their younger
child, if she did not get enough sleep. 
She explained that the older child had a lot of allergies and caught
strep easily.  She also indicated that he
had severe sinus problems and had an eye problem that had recently been
discovered.  She acknowledged that she
had not taken the children to a doctor every time they missed school because of
illness but said that she would usually get a doctor=s
excuse.  She later admitted that she had
some responsibility for the children=s
tardiness and absence from school.  She
denied keeping the older child from attending Boy Scouts.  She also acknowledged taking her older child=s lunch to school every day.  








Vickie testified that, while they were married,
Jackie called her by obscene and racist nick-names and that he used to beat
her.  She said he would slap her, pull
her hair, punch her in the stomach, drag her across the floor, throw her
outside, and tell her she would never see their son again.  She indicated that it was in the children=s best interest to live with her.  

Vickie denied ever telling Jackie that she would
bring the younger child by and then not show up.  When asked if she had ever prevented Jackie
from having the child overnight, she replied: AI
can=t prevent him, no, I can=t.@  

Scarlett Gale Whitteker, the principal of East Ridge Elementary School in
Sweetwater, testified that she and her husband were personal friends of Jackie
and that both children had attended East Ridge. 
She testified that the older child was not living up to his potential
and that he could probably make straight As.  She said she was concerned about his numerous
absences and tardies. 
She said that the younger child had been absent 6 of 39 days and had
been tardy for 9 days.  As for the older
child, she testified that he had 31 absences in kindergarten, 24 or 25 in first
grade, 26 in second grade, and 19 in third grade.  She said he had 31 tardies
in first grade, 16 in second grade, and 26 in third grade.  She testified that that indicated a problem
from a parenting standpoint with getting a child to school and attempting to do
what is best for that child in the educational process.  She stated that she believed that kind of
attendance is detrimental to a child=s
development.  She said that the state
guidelines on absences are not more than 17. 
She said that there were several days when the younger child was taken
out of school between 10:00 and 11:00 a.m. for the rest of the day.  She stated that she had never observed Jackie
being irresponsible toward his obligations as a parent.    

Whitteker acknowledged
that most or all of the absences were excused because there was a note either
from the parent or a doctor.  She also
noted that the older child was doing well in school and was in the gifted and
talented program at school.  She said
that, while the older child was at her school, she was not aware of any
significant physical thing that would have been detrimental to his
achievement.  Tamra
Lee Burt, an attendance clerk at East Ridge, identified the excuse notes for
the younger child.  








Gay Storch, the
preschool teacher and director of Saint Stephens Episcopal School, testified
that the younger child had 16 absences during the 46 school days she was at the
school prior to her withdrawal by Vickie. 
She said she understood from the teacher that, when the child was
absent, the child did not bring back her makeup work.  She acknowledged that Vickie told her that
several of the absences were from the child having strep throat and
tonsillitis.  

She said that she had observed Jackie with the
child, that he seemed to have a good relationship with her, and that there was
nothing about his relationship with her that gave her any concern.  

Dr. Judy Peckett Clayton
testified that she had seen the younger child 3 times in the previous 90 days
and that on those occasions she had given the child antibiotic, suppositories
for vomiting, and cough syrup.  She said
that, several times when the children were brought in because they were sick,
she did not see anything wrong.  

Kathy McCombs Smart, the principal of the older
child=s
intermediate school, testified that absences can impact the educational
development of the child and that success in school is directly related to
attendance.  She related that Vickie
brings lunch to the child every day and that she is the only parent to do
so.  She said that the child is a B
student, but she agrees that he is bright enough to be a straight A
student.   She acknowledged that the
child has a problem with his eyes not working together to read the printed
word.  She said she had no doubt that
Vickie is a caring mother and that Jackie is a caring father.

Barbara Villanueva, the attendance clerk at the
older child=s
intermediate school, testified that the school bell rings at 8:00 a.m. and that
the tardy bell rings at 8:10 a.m.  She
said that the child was absent 22 times and tardy 19 times in the fourth grade
and that, on 7 of the occasions on which he was tardy, he did not arrive until
after 9:50 a.m.  She indicated that at
10:00 a.m. a child is counted absent.  
She stated that the child had 9 absences and 14 tardies
from the beginning of school until December 12, 2002.  She said this was not a normal attendance
record for a student at the school.  She
also noted that the child had 22 early releases in fourth grade and 16 early
releases already in fifth grade.  She
acknowledged that he had returned to school after being released early 7 times
in fourth grade and had returned to school after being released early 6 times
in fifth grade.  She noted that she had
several times observed the child calling Vickie when he was sick at school and
that she did not believe that he was faking. 
She admitted that, if the child had been hers, she would have picked him
up and taken him home.  She said she had
observed Vickie with her child, and she thinks Vickie is a good mother.  She said she had never seen her do anything
other than act in the best interest of her children in regards to the early
checkouts.








Karyn Carpenter Green, a
family friend, testified that she had observed the older child in choir and
other church activities and that it appeared that Jackie brought him and his
sister.  She said that he appeared to be
a devoted father and that, as a mother, she would not have had any concerns if
the children were told to live with Jackie on a permanent basis.  

Cindy Lee, Jackie=s
sister, testified that she is a principal at an elementary school.  She said that Vickie was frequently two or
three hours late in bringing or picking up the children -- that it kind of fit
her mood.  She stated that school
attendance is vital to a child=s
educational and emotional development. 
She indicated that the school attendance of her niece and nephew are
unacceptable and that in San Angelo she would have to file truancy charges in
such cases.  She insisted that it is
unusual for a child to arrive at nearly 10:00 a.m.  She gave her opinion that the children=s attendance records indicate a parent
for whom education is not a priority. 
She said  Jackie had coached the
older child in basketball, baseball, and soccer.  She insisted that, if her brother were to be
given custody of the younger child, she would have no concerns about her
emotional well-being.  She stated that
she felt the children would be better off with her brother.

Jackie testified that he is a graduate of Texas
Tech University and that he operates I-20, Incorporated, a truck service
business.  He stated that Vickie would
not let him see the children at their regular times.  He indicated that he did not get to see the
younger child much during her first three or four years.  He said that he did not do anything about it
so that it would not affect the older child. 
He said that he had never seen the children outside Vickie=s house and that they were usually at
her bail bond office.  He said that the
older child was seldom sick when he was with him.  He acknowledged that he, too, starts out
sleeping with the children and getting up later to sleep separately.  He said that he was going to work on that.  He promised that, if the children were with
him, he would see to it that they are at school.  








Janet Kay Brooks testified that she is a Bridges
specialist at the intermediate school and that this is a program designed to
help kids with motor skills and visual skills to make them more efficient in
the classroom.  She said she tested the
older child and found there were some motor skill problems and some slight
visual problems that needed to be addressed. 
She indicated that the child had balance problems and was not walking
forward and backward on a one-by-four board. 
She said that, visually, the child=s
eyes came together, but not at the same time. 
She stated that, when she observed the child in class, he was up moving
around, not focused on what he was supposed to be doing.  She said that she did not think her testing
would explain an average of 25 absences a year, twenty-something tardies, and twenty-something average days per year being
taken out of school early.

Patricia Sue King, a friend of Vickie, testified
that she knows both Vickie and Jackie. 
She said that Vickie was always taking care of the children and always
doing what she needs to do for them.  She
said that, in her opinion, it would be in the best interest of the children to
live with Vickie because she is a good mother and very interested in taking
care of the children.  She said that
Jackie always wanted to be in control of everything with Vickie and the
children.  She said she based this
opinion on her observation and the way he behaves when he is with them, but she
could not put it into words or give specific examples.  She stated she just felt he was
manipulative.  She said that, when she
would speak to the older child at church, he would act like he was afraid to
say anything, but that he was not like that when he was with Vickie.  She indicated that she was not aware of the
children=s record
of absences, of tardies, and of being taken out of
school early.  She admitted that, if
someone cannot get their child to school, if they write excuses when the child
is not sick, if they cannot get the child to school on time, and if they take
them out to what equates to about 40 to 50 school days per year where they are
not getting a full day, they would not be a good mother.








Sandra Pearcy, a
counselor intern, also a friend of Vickie, stated that she knew both Vickie and
Jackie.  She testified she had never
known of Vickie having a problem with the children playing outside.  She stated that Vickie is a good mother who
loves her children.  She indicated that,
in her opinion as a mother and counselor, she could not imagine taking a child
from its mother in the absence of the mother being violent or having drug or
alcohol problems.  On cross-examination,
she acknowledged that the law did not make such determinations based upon
gender and that a counselor could not express such an opinion about conservatorship in the absence of interviewing both sides
in the case.  She indicated that Vickie
could be considered a good mother, despite all the school attendance problems,
if the children were able to keep up with their work and they were sick.              Teresa
Sanchez, a drug intake technician for adult probation, who is a friend of
Vickie, stated that her children and Vickie=s
children play together.  She indicated
that there had never been any trouble with Vickie letting her kids play
outside, but she acknowledged that the children had never gone to play at
Vickie=s
house.  Sanchez asserted that Vickie had
never done anything that would give her concern about her abilities as a
mother.  Sanchez acknowledged that she
was really over- protective of her own children and that she saw Vickie the
same way, then she testified that Vickie was not smothering or overprotective
of the children.  With respect to the
younger child being withdrawn from school, she said that, from her impression
from talking with and observing the child, the child was afraid to go to
school.  When confronted with the
children=s school
attendance records, she was unable to express an opinion as to whether that
showed that Vickie was not a good mother, basically saying that it depended
upon whether the children were sick.

Martha H. Frick, a friend and business associate
of Vickie, stated that she was with her and the children about three to four
days per week.  She characterized Vickie
as very family oriented.  She expressed
an opinion that Vickie is a good mother and that, if she had children, she
would entrust them to her care.  When
asked what a good mother is, she said:  AWell, one that cares and feeds and
keeps them clean and gets them to school, gets them to all the functions they have
to go to, gives them medical attention.@  She said that, in her opinion, it was okay
that the children did not get to school on time and that they got checked out
of school early about twenty-something times per year.  With respect to the children=s absences, she said that you have to
take into consideration whether the child was sick.  She acknowledged that she would not allow her
children to miss that much school for no reason.  When asked about the total attendance issue
with respect to the children, she said that she could not give a Ayes@
or Ano@
answer as to whether that was indicative of a responsible mother.  








Joni Renee Ferguson, Vickie=s
next-door neighbor, testified that she has seen Vickie=s
children play outside and that Vickie does not have a problem with their doing
so.  She said she would trust Vickie to
take care of her child.  She stated that
Vickie had never done anything that would cause her concern about her abilities
as a mother.  She acknowledged that she
had been called as a witness over the weekend and apprised of what she needed
to deal with when she was testifying.  

Misty Sorrels, the neighbor=s
sister, testified that she is an elementary education student at Hardin Simmons
University.  She said that she had
babysat in the past with Vickie=s
children.  She indicated that she sat
with them at Vickie=s shop
and at Jackie=s
house.  She said that, when Vickie fed
the kids, she would feed them Aeverything
from Sonic to casseroles to what normal people eat; anything that you would normally
eat on a daily basis.@  She said that she had never eaten with Jackie
and the kids but that, from being at his house, the kids would eat Lunchables, frozen pizza, and frozen hamburgers.  She said that, when she was out with Vickie,
Jackie would often call and be yelling. 
When pressed for details, she said she could recall one instance about
two months previously.  Subsequently, she
recalled another instance two weeks before that.  She said she was not telling the court that
Jackie did not have a good relationship with his children.  

In addition to hearing the testimony, the court
apparently interviewed the older child, but there is no transcription of their
conversation.  Considering all of the
testimony in the record, we hold that the trial court did not abuse its
discretion in modifying the joint managing conservatorship
by naming Jackie managing conservator of the older child or in naming him as
the managing conservator of the younger child. 


Vickie argues that what she terms Aeducational neglect@ cannot be the basis for modification
or establishment of conservatorship because there is
no precedent for it and because it does not fit into any of the factors for
consideration in determining the best interest of the child as set forth in Holley
v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976).  Those factors include the following:  (1) the desires of the child; (2) the
emotional and physical needs of the child now and in the future; (3) the
emotional and physical danger to the child now and in the future; (4) the
parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent that might indicate that the existing
parent-child relationship is not a proper one; and (9) any excuse for the acts
or omissions of the parent.  Id.  From the evidence presented, the trial court
could reasonably have found that Vickie=s
failure to have the children attend school as they should and her failure to
follow the time guidelines for visitation reflected on Vickie=s parental abilities and indicated that
the existing parent-child relationship was not a proper one.  Also, based upon the evidence, the trial
court could have chosen not to believe the excuses offered by Vickie for the
children=s
frequent absence and tardiness from school. 
If we are in error in finding that the children=s
absences and tardiness fall within the factors set forth in Holley, we
note that the supreme court pointed out that the list of factors is not
exhaustive.  Id. at 372.  We find that the trial court did not abuse
its discretion in its findings supporting its designations of conservatorship. 








Vickie argues that the trial court abused its
discretion because educational neglect does not fall within the family code=s definition of Aneglect.@ 
The definition to which she refers relates only to the portion of the
family code dealing with investigation of report of child abuse or
neglect.  TEX. FAM. CODE ANN. ' 261.001(4) (Vernon 2002). The fact
that Vickie=s actions
might not fall within the realm of child abuse or neglect in that context does
not mean that they might not constitute acts or omissions reflecting on her
parental abilities or showing that the parent-child relationship is not a
proper one.  She also refers us to Texas
school attendance law regarding excused medical absences, but ignores testimony
from which the trial court could have determined that the numerous absences and
tardies were not medically justified.  She mentions the right of children to be homeschooled, but there is no evidence that she was homeschooling the children. 
Finally, she speaks of termination cases, even though this is not a
termination case.  We overrule Issue Nos.
1 and 2.

Vickie asserts in Issue No. 3 that the trial court
erred by failing to investigate charges of domestic violence against
Jackie.  Her argument shows that she is
contending that the trial court did not appropriately weigh her evidence of
domestic violence that occurred during her marriage to Jackie or that the trial
court did not consider such evidence in making its determination regarding conservatorship. 
Vickie=s
arguments that the trial court did not appropriately weigh her evidence of
domestic violence or did not consider such evidence is unsupported by the
record and constitutes only speculation on her part. 

Vickie relies upon the case of In the Interest
of M.R., 975 S.W.2d 51 (Tex.App. - San Antonio
1998, pet=n den=d). 
We find that case to be distinguishable because, in that case, the
record reflects that the trial court refused to hear the evidence regarding
domestic violence.  Id. at 52.  In the case at bar, the trial court did hear
the evidence.  We overrule Issue No. 3.








Vickie urges in Issue No. 4 that the trial court
erred by admitting substantial evidence of religious belief and practice,
contrary to the United States and Texas Constitutions and case law.  Vickie testified that she attended Holy
Family Catholic Church; but, when asked when she took her children there, she
said she did not, but prayed at home. 
She acknowledged that the children did not attend any church activities
with her.  Jackie testified that he took
the children to the First Baptist Church when he had them, on Sunday morning
and Wednesday night, and that they were involved in activities there.  Because no objection was made to any of this
testimony, nothing is presented for review. 
In re Marriage of Rutland, 729 S.W.2d 923, 931 (Tex.App. - Dallas 1987, writ ref=d
n.r.e.).  Vickie relies upon the opinion in In the Matter of the Marriage of Knighton, 723 S.W.2d 274, 285 (Tex App. - Amarillo
1987, no writ), in urging that no objection was required to preserve this issue
for appellate review because it constitutes fundamental error.  We find Knighton
to be distinguishable.  In Knighton, a substantial amount of the
testimony involved testimony concerning the appellant=s
religious beliefs and practices, whereas in this case there was only a brief
mention of the fact that Vickie was a Catholic who did not attend church while
Jackie was a Baptist who attended church twice per week and involved the
children in his church=s
activities.  Id. at 277-78.  We believe that Rutland correctly sets
out the rule with respect to preservation of error in a case such as the one at
bar.  We overrule Issue No. 4.

Jackie requests that we impose sanctions against
Vickie, in the form of his reasonable attorney=s
fees, because the appeal is frivolous. 
Because we do not find this appeal to be frivolous, we deny Jackie=s request for sanctions.   

The order setting aside the joint managing conservatorship and establishing Kenneth Jack Lee, Jr. as
sole managing conservator of the two children is affirmed.

 

PER CURIAM

 

September
23, 2004

Not
designated for publication.  See
TEX.R.APP.P. 47.2(a).

Panel consists of:  Arnot, C.J., and

McCall, J., and Hill,
S.J.[1]











[1]John G. Hill, Former Chief Justice, Court of Appeals,
2nd District of Texas at Fort Worth, sitting by assignment.