**In the Interest of K.L.R., a Child.**

No. 12–03–00052–CV.

Court of Appeals of Texas, Tyler.

Feb. 16, 2005.

Rehearing Overruled March 24, 2005.

---

1. Chief Justice Johnson did not participate in this opinion.

Elsie Martin–Simon, Law Office of Elsie Martin–Simon, L.T. 'Butch' Bradt, The Teltschik Law Firm, Houston, for appellant.

Melissa A. Charles, Longview, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and DeVASTO, J.

## OPINION

DIANE DeVASTO, Justice.

Carla Lea Hendrickson ("Carla") appeals from a final order entered in a suit affecting the parent-child relationship. On appeal, Carla presents thirteen issues. We reverse and remand in part and affirm in part.

### BACKGROUND

Carla and Jerry Wayne Roberson, Jr. ("Wayne") are the parents of a son, K.L.R., born on January 20, 1994. Carla and Wayne were divorced later that year. They were appointed joint managing conservators of K.L.R., and Carla was appointed primary joint managing conservator.

In October 1998, Carla filed a motion to modify seeking to suspend Wayne's visitation with K.L.R. or, alternatively, to allow him supervised visitation only. Carla also sought an increase in child support and a temporary restraining order (TRO) prohibiting Wayne from removing K.L.R. from Carla's possession. Wayne filed a cross-petition requesting the appointment of a sole managing conservator instead of joint managing conservators and also requesting that he be appointed to replace Carla as K.L.R.'s primary custodian.

Neither party actively pursued the matter until February 20, 2001. On that date,

Wayne filed a first amended cross-petition requesting appointment as K.L.R.'s conservator with the exclusive right to determine K.L.R.'s primary residence or, alternatively, as K.L.R.'s sole managing conservator. He also requested temporary orders, an ex parte TRO to prohibit Carla from removing K.L.R. from the jurisdiction of the court, his school, or hiding or removing the child from Wayne's possession, and an injunction. The trial court granted the ex parte TRO (the "TRO") and set a hearing for March 5. At the March 5 hearing, the trial court appointed Wayne temporary primary custodian, permitted Carla visitation with K.L.R. by telephone only, ordered Carla to submit to an evaluation by Dr. Gayle Burress, a licensed counselor, and enjoined Carla from removing K.L.R. from the jurisdiction of the court, his school, or hiding the child or interfering with Wayne's possession. The court also abated Wayne's child support obligations, but found that Carla was not required to pay child support. Carla did not appear at the hearing. On March 28, 2001, the trial court signed an order incorporating its rulings.

Almost a year later, on March 13, 2002, Carla filed an amended original answer asking that she be designated conservator with the exclusive right to determine K.L.R.'s primary residence. Carla requested that Wayne be ordered to pay child support and arrearages. She also filed a motion to modify the existing temporary orders. Wayne, in turn, filed a second amended cross-petition including additional allegations of misconduct against Carla and seeking further relief, including retroactive child support from Carla. Each party filed at least one subsequent amendment, motion to modify, or motion for additional relief. On December 10, 2002, after a protracted discovery dispute between the parties, the trial court

granted Wayne's motion to modify. The trial court ordered that both parents would remain joint managing conservators, but appointed Wayne as primary managing conservator with the exclusive right to establish K.L.R.'s primary residence. The court also ordered Carla to pay child support and awarded Wayne's counsel his attorney's fees.

Carla filed a motion for new trial, which she subsequently amended. The trial court denied the motion, and this appeal followed.

### NOTICE OF HEARING

As part of her first issue, Carla contends that the record is silent as to whether her attorney of record was served with notice of the March 5, 2001 hearing on the TRO. Additionally, Carla argues at she was not personally served.

#### *Applicable Law*

■ The Texas Rules of Civil Procedure state that a true copy of every pleading, plea, motion, or application to the court for an order shall be served on all parties. Tex.R. Civ. P. 21. Further, on the occasion of a party's first appearance through counsel, the attorney whose signature first appears on the initial pleadings for any party shall be the attorney in charge, unless another attorney is specifically designated therein. Tex.R. Civ. P. 8. Until such designation is changed by written notice to the court and all other parties, the attorney in charge shall be responsible for the suit as to such party. *Id.* All communications from the court or other counsel with respect to a suit shall be sent to the attorney in charge. *Id.* Moreover, notice to an attorney is notice to a party. *Gem Vending, Inc. v. Walker,* 918 S.W.2d 656, 658 (Tex. App.-Fort Worth 1996, no writ) (citing Tex.R. Civ. P. 306a(4), (5)).

### Analysis

■ On July 9, 1999, Elsie Martin–Simon filed a motion to substitute for Betty J. Barret (later "Homminga") as counsel for Carla. No signed order substituting counsel is in the record. On February 27, 2001, Homminga filed a motion to withdraw. Her motion stated that Martin–Simon filed a designation of lead attorney on June 6, 1999 and was employed by and had appeared with Carla since that date. No designation of lead attorney is in the record. At the March 5 hearing, Wayne's attorney stated that he served notice on Martin–Simon who, he believed, had appeared as Carla's attorney of record. The trial court acknowledged that both Martin–Simon and Homminga had appeared for Carla in the case. At the conclusion of the hearing, the trial court granted Homminga's request to withdraw as Carla's attorney and signed an order incorporating its ruling.

Carla does not argue that her lead attorney was not served, but contends instead that Martin–Simon was not an attorney of record when the TRO was granted. We disagree. The record shows that Homminga believed Martin–Simon had been Carla's lead attorney since June 1999 and that Martin–Simon had appeared with Carla as her attorney since that date. The record also shows that, prior to the date the TRO was granted, Martin–Simon had (1) corresponded with the trial court as Carla's attorney, (2) acted as Carla's attorney in furnishing Carla's new address to the district clerk's office, and (3) sent opposing counsel copies of her correspondence with the trial court and the district clerk.

Because Martin–Simon had appeared as Carla's attorney before the TRO was granted, she was properly served as an attorney of record for Carla. *See* TEX.R. CIV. P. 8. Therefore, notice to Martin–Simon was notice to Carla.[1] *See Gem Vending, Inc.*, 918 S.W.2d at 658. Accordingly, Carla's first issue, insofar as it pertains to her failure to receive notice of the March 5 hearing, is overruled.

### EX-PARTE TEMPORARY RESTRAINING ORDER AND TEMPORARY ORDERS

Carla also argues in her first issue that the underlying motion for the TRO did not state specific facts showing an immediate danger to K.L.R. as required by the Texas Family Code. Carla further contends that the TRO did not state that a serious and immediate question concerning the child's welfare existed. Finally, Carla argues that the trial court abused its discretion by signing the March 28 order that, in part, prohibited her from having any contact with K.L.R.

### Applicable Law

Generally, while a suit for modification is pending, the court may not render a temporary order that has the effect of changing the designation of the person who has the exclusive right to determine the primary residence of the child under the final order. TEX. FAM.CODE ANN. § 156.006 (Vernon 2002). However, the court may enter such an order if the child's present living environment may endanger the child's physical health or significantly impair the child's emotional development. *Id.* The court may also make a temporary order for the safety and welfare of the child, including an order for the temporary conservatorship of the child. TEX. FAM. CODE ANN. § 105.001(a)(1) (Vernon 2002). If the TRO or temporary order excludes a parent from possession of or access to a child, it may not be rendered except on a

---

1. After the March 5 hearing, Mike Crawford, a process server, filed an affidavit explaining his unsuccessful attempts to serve Carla at her Canton address.

verified pleading or an affidavit in accordance with the Texas Rules of Civil Procedure. TEX. FAM.CODE ANN. § 105.001(c)(3) (Vernon 2002). Certain temporary orders may not rendered except after notice and a hearing, including orders (1) for the temporary conservatorship of the child, (2) for the temporary support of the child, or (3) for payment of reasonable attorney's fees and expenses. TEX. FAM.CODE ANN. § 105.001(a), (b) (Vernon Supp.2004–2005). Temporary orders rendered under section 105.001 of the Texas Family Code are not subject to interlocutory appeal. TEX. FAM. CODE ANN. § 105.001(e) (Vernon 2002)

*Analysis*

■ In his first amended cross-petition, Wayne sought an ex parte TRO based upon his concern that K.L.R's present environment might endanger his physical health or significantly impair his emotional development. In his supporting affidavit, Wayne stated that Carla was about to move K.L.R. to a house of "unknown quality and house environment." He also cited Carla's deteriorating physical condition, her arrest on two felony charges and subsequent time in jail, and his fears that Carla might flee with K.L.R. These allegations satisfy the requirements of section 105.001(b) and (c). A TRO granted under section 105.001 need not define the injury or state why the injury is irreparable. *See* TEX. FAM.CODE ANN. § 105.001(b)(1). Therefore, the trial court did not abuse its discretion in granting the TRO or in failing to include the language that Carla contends is mandatory. *See* TEX. FAM.CODE ANN. § 105.001(a), (b).[2]

■ As to Carla's complaint about the March 28 temporary order, we note that, on December 10, 2002, the trial court ordered modification of the parent-child relationship. This judgment disposed of all parties and issues in the proceeding, and is, therefore, a final judgment. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 200 (Tex.2001). Complaints about temporary orders are moot where a final order has been entered. *In re P.R.*, 994 S.W.2d 411, 417 (Tex.App.-Fort Worth 1999, pet. dism'd w.o.j.), *disapproved on other grounds, In re J.F.C.*, 96 S.W.3d 256, 267 & n. 39 (Tex.2002); *Wright v. Wentzel*, 749 S.W.2d 228, 234 (Tex.App.-Houston [1st Dist.] 1988, no writ); *Garner v. Garner*, 673 S.W.2d 413, 418 (Tex.App.-Fort Worth 1984, writ dism'd). Because the March 28 order is a temporary order and a final order has been entered in the proceeding, Carla's argument regarding the March 28 order is moot. Accordingly, we overrule Carla's first issue insofar as it pertains to the TRO and the March 28 temporary order.

*MOTIONS TO MODIFY TEMPORARY ORDERS*

■ In her second issue, Carla contends that the trial court abused its discretion by refusing to hear either of her two motions requesting court-ordered possession of K.L.R.[3] Carla also argues that the trial court abused its discretion by *sua sponte* canceling a hearing on April 8, 2002 regarding the temporary orders, thereby denying her right to be heard. Carla contends that she informed the court of her unavailability for the April 1 hearing. Be-

---

**2.** Carla relies on section 262.101 of the Texas Family Code in her argument regarding the inadequacy of Wayne's affidavit and the TRO. This section pertains to a suit filed by a governmental entity requesting permission to take possession of a child without prior notice and a hearing. *See* TEX. FAM.CODE ANN.

§ 262.101 (Vernon 2002). As such, section 262.101 does not apply to the present case.

**3.** Approximately two months after filing her March 13, 2002 motion to modify the temporary orders, she filed an emergency motion to modify, alleging additional grounds.

cause the trial court conducted the hearing in her absence, her argument continues, the hearing constituted an impermissible ex parte communication by Wayne's counsel and therefore an abuse of discretion.

An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citation to authorities and to the record. TEX.R.APP. P. 38.1(h). However, Carla's arguments are summary and conclusory and contain no citations to authorities. Therefore, Carla has waived this issue. *See id.* Even if Carla had not waived this issue, however, her contentions are without merit.

A review of the record reveals that, far from refusing to hear Carla's motions to modify, the trial court attempted to hear the first motion and, in fact, did conduct a hearing on her emergency motion on July 1, 2002. However, the trial court delayed at least one hearing on Carla's first motion in order for Wayne to conduct discovery, including taking Carla's deposition. According to the trial court, attempts to proceed with the hearing on Carla's emergency motion to modify were delayed because each party failed to produce discovery to which the other party was entitled. Further, the April 1 hearing was not an ex parte communication with Wayne's attorney because as Carla's counsel acknowledged in a subsequent motion, she was sent notice of the hearing. Moreover, the trial court found that the notice was "timely." Because the trial court attempted to conduct hearings on Carla's motions only to be delayed by the parties' inaction, the trial court did not abuse its discretion by canceling or continuing the hearing of her motions. Accordingly, Carla's second issue is overruled.

**EXPERT WITNESS**

In her sixth issue, Carla contends that the trial court abused its discretion by allowing Dr. Gayle Burress to testify concerning the suitability of each parent to be appointed sole or joint managing conservator of K.L.R.[4] According to Carla, Burress's credentials were unreliable, her opinions were subjective, and she did not otherwise qualify as an expert. Wayne argues that Carla's Rule 702 motion to exclude the testimony of all experts was not specific as required by Rule 103(a)(1) of the Texas Rules of Evidence. Moreover, he contends that any error in allowing Burress to testify is harmless because Carla has not shown that the failure to exclude Burress's testimony caused the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1.

### Applicable Law

The qualification of a witness as an expert is within the trial court's discretion. *Broders v. Heise,* 924 S.W.2d 148, 151 (Tex.1996). An appellate court will not disturb a trial court's exercise of its discretion absent clear abuse. *Id.* "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles." *Id.* (quoting *E.I. du Pont de Nemours and Co. v. Robinson,* 923 S.W.2d 549, 558 (Tex.1995)). Further, the party offering the expert's testimony bears the burden to prove that the witness is qualified under Texas Rule of Evidence 702. *Id.*

To obtain the reversal of a judgment on appeal on the ground that the trial court made an error of law, the appellate court must conclude that the error

---

4. The trial court appointed Burress to evaluate and examine both parties and K.L.R. The court also ordered the parties to sign any and all releases for medical or psychological records required by Burress. Carla filed a motion challenging Burress's qualifications as an expert, and the trial court held a hearing on the motion.

complained of probably caused the rendition of an improper judgment. TEX.R.APP. P. 44.1. The erroneous admission of evidence that is merely cumulative of properly admitted testimony is harmless. *Keene Corp. v. Rogers,* 863 S.W.2d 168, 179 (Tex. App.-Texarkana 1993, writ stayed) (citing *Gee v. Liberty Mutual Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989)). In making this determination, the appellate court must review the entire record. *Southland Lloyd's Ins. Co. v. Tomberlain,* 919 S.W.2d 822, 827 (Tex.App.-Texarkana 1996, writ denied) (citing *McCraw v. Maris,* 828 S.W.2d 756, 758 (Tex.1992)).

 Texas Rule of Evidence 702 states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX.R. EVID. 702. In order to constitute scientific knowledge that will assist the trier of fact, the proposed testimony must be relevant and reliable. *Robinson,* 923 S.W.2d at 556. To be relevant, the proposed testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* (citing *United States v. Downing,* 753 F.2d 1224, 1242 (3d Cir. 1985)).

 Additionally, scientific evidence that is not grounded "in the methods and procedures of science" is no more than "subjective belief or unsupported speculation." *Id.* at 557 (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 590, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993)). Unreliable evidence is of no assistance to the trier of fact and is therefore inadmissible under Rule 702. *Id.* Nonetheless, the inquiry into the reliability of an expert's testimony is a "flexible one."

*Nenno v. State,* 970 S.W.2d 549, 560–61 (Tex.Crim.App.1998) (quoting *Daubert,* 509 U.S. at 594, 113 S.Ct. at 2797).

 Where, as here, the trial court must address a field of study aside from the hard sciences, such as the social sciences or a field based primarily upon experience and training as opposed to the scientific method, the requirement of reliability applies but with less vigor than to the hard sciences. *See id.* at 561. In that instance, the appropriate inquiry is (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field. *Id.* Hard science methods of validation, such as assessing the potential rate of error or subjecting a theory to peer review, may be inappropriate for testing the reliability of a field of expertise outside the hard sciences. *Id.*

### Analysis

The record indicates that Burress is a licensed counselor. Therefore, in addressing Carla's complaint, we must determine whether Wayne conducted the appropriate inquiry relating to Burress's field of expertise.

*Whether field of expertise is legitimate*

 Burress described her qualifications, stated her opinions regarding K.L.R. and Carla, and related the bases of her opinions. Burress testified that she had a bachelor's and master's degree in counseling and a doctorate in counseling and student personnel guidance. Nowhere did Burress state that counseling is a legitimate field nor can such a statement be implied from her testimony.

*Whether subject matter of testimony was within scope of field*

██ In her capacity as a counselor, Burress personally visited K.L.R. and Wayne and tested Carla. In a letter to the trial court, Burress recommended that Carla have supervised visitation with K.L.R. and that K.L.R. continue to be placed with Wayne. At the final hearing, Burress stated to the trial court that, in her opinion, Wayne should be named K.L.R.'s possessory conservator. She also recommended that Carla be allowed only supervised visitation. Nowhere did she state that her testimony was within the scope of her field nor can it be implied from her testimony.

*Whether expert's testimony properly relies upon and/or utilizes the principles involved in the field*

██ According to Burress, she administered the Minnesota Multiphasic Personal Inventory ("MMPI") to Carla. Burress agreed that the MMPI provides several sources of behavior and symptomatic hypotheses about the person taking the test. Further, she conducted an interview with Carla and observed K.L.R. at home, at her office, and at school. Nowhere does Burress state that her testimony properly relied upon and/or utilized principles involved in her field.

In summary, Burress did not relate to any of the three prongs of inquiry necessary to establish the admissibility of her testimony. Consequently, the trial court erred in allowing Burress to testify. Therefore, we must now ask whether the trial court's error caused the rendition of an improper judgment.

*Harm analysis*

██ At trial, Burress recommended that Wayne remain K.L.R.'s possessory conservator and that Carla be given supervised visitation. However, the trial court declined to follow Burress's recommendation and allowed Carla standard visitation. Burress also testified regarding Wayne's suitability as a parent, Carla's emotional problems, and K.L.R.'s relationship with Wayne and Carla. K.L.R.'s teachers and principal testified that K.L.R. was well-adjusted and had a good relationship with his father. Wayne testified regarding his current relationship with K.L.R. and his problems in the past. Carla testified extensively regarding her past health problems, her relationship with K.L.R., and her problems with Burress and this case. Moreover, the trial court's findings of fact and conclusions of law do not indicate that the trial court specifically relied upon Burress's testimony in making its rulings.

As previously stated, the trial court did not follow Burress's recommendation regarding Carla's visitation. Furthermore, much of Burress's testimony is cumulative of the testimony presented by other witnesses. Therefore, based upon our review of the record, we conclude that the nonexpert testimony is sufficient to support the trial court's order. Consequently, we hold that the trial court's failure to exclude Burress's testimony did not cause the rendition of an improper judgment. Accordingly, Carla's sixth issue is overruled.

### FELONY INDICTMENTS AND FIFTH AMENDMENT

In her ninth issue, Carla contends that the trial court abused its discretion by admitting as evidence copies of her felony indictments. Moreover, she argues that she properly and timely invoked her Fifth Amendment privilege not to offer evidence against herself because felony charges were pending against her. Wayne contends that evidence of arrests can be admitted as evidence to prove what is in the best interest of the child. Additionally, Wayne argues that a party's conduct and demeanor are factors for the trial court to

consider in determining if there is a material and substantial change of circumstances.

### Applicable Law

▮▮▮▮ Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. TEX.R. EVID. 404(b). However, this evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* In fact, evidence of arrests is admissible for the purpose of determining what is in the child's best interest. *See In re M.R.*, 975 S.W.2d 51, 55 (Tex.App.-San Antonio 1998, pet. denied). A trial court's findings of fact are binding on an appellate court unless they are so contrary to the great preponderance of the evidence as to show a clear abuse of discretion. *In re Ferguson*, 927 S.W.2d 766, 769 (Tex.App.-Texarkana 1996, no writ). In the absence of such a clear abuse of discretion, an appellate court should not substitute its judgment for that of the trial court. *Id.*

▮▮▮ Both the United States Constitution and the Texas Constitution guarantee an accused the right not to be compelled to testify or give evidence against herself. *In re Speer*, 965 S.W.2d 41, 45 (Tex.App.-Fort Worth 1998, no pet.) (citing U.S. CONST. amend V; TEX. CONST. art. I, § 10). A party does not lose this fundamental constitutional right in a civil suit. *Id.* However, in a civil suit, a witness's decision to invoke the privilege against self-incrimination is not absolute. *Id.* Instead, the trial court is entitled to determine whether assertion of the privilege appears to be based upon the good faith of the witness and is justifiable under all of the circumstances. *Id.* Because of the difference between the civil and criminal context, the United States Supreme Court

allows the fact finder in civil cases to make negative inferences based upon the assertion of the privilege. *Id.* at 46 (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810, 821 (1976)).

### Analysis

At the final hearing, the trial court took judicial notice that Carla had three pending felony charges in the 145th Judicial District Court in Nacogdoches County, Texas. Sheriff's records of those charges were admitted at the hearing, showing that Carla was arrested on February 15, 2001. At the conclusion of the final hearing, the trial judge stated that he could not ignore Carla's felony charges when determining if there had been a material change in circumstances of the child, conservator, or other party affected by the order since the date of the rendition of the order. *See* TEX. FAM.CODE ANN. § 156.101 (Vernon 2002). In its findings of fact and conclusions of law, the trial court found that the changed circumstances included Carla's arrest for one or more felony offenses that were pending at the time of trial. Further, the trial court found that Carla was arrested and incarcerated on one of the felony offenses on the date of a period of possession of Wayne that precipitated presentation of the motion for the TRO and temporary orders.

▮▮▮ A conviction is not a prerequisite to admitting evidence of Carla's felony indictments. *See In re M.R.*, 975 S.W.2d at 55. Moreover, Wayne could use this to establish that her felony indictments, arrests, and incarceration were a material change in circumstances and that modification would be in K.L.R's best interest. *See id.* Because evidence of Carla's felony charges was used for the purpose of determining K.L.R.'s best interest and not to prove character conformity, the trial court

did not abuse its discretion in admitting the evidence. *See* TEX.R. EVID. 404(b).

Carla asks this Court to take judicial notice that one of the felony charges has been dismissed. As documentation, she furnished a certified copy of a motion and order dated March 4, 2003 dismissing one felony charge against her. However, Carla did not, and could not, properly introduce the motion at trial. We cannot take judicial notice of the records of any court not properly admitted into evidence before the trial court. *Elwell v. State*, 872 S.W.2d 797, 799 (Tex.App.-Dallas 1994, no pet.). Further, we decline to take judicial notice as Carla requests because to do so would provide us with evidence that was unavailable to the trial court when it considered the motion to modify. *Tran v. Fiorenza*, 934 S.W.2d 740, 742–43 (Tex.App.-Houston [1st Dist.] 1996, no writ).

Regarding Carla's complaint relating to her Fifth Amendment privilege, some of Carla's decisions to invoke the privilege do relate to the felony charges, such as the decision not to identify her signature because one of the felony charges involves forgery. However, the trial court could have made negative inferences based on Carla's assertion of the privilege when she refused to answer where she had been living for over two years during a time of possession of K.L.R. or whether she had been charged, arrested, or placed in jail for two felonies during a time of possession of K.L.R. *In re Speer*, 965 S.W.2d at 45 (citing *Baxter*, 425 U.S. at 318, 96 S.Ct. at 1558, 47 L.Ed.2d at 821). These negative inferences then could be used by the trial court as a factor in determining whether there had been a material change in circumstances and whether modification would be in K.L.R.'s

best interest. Accordingly, we overrule Carla's ninth issue.

## SPLIT CUSTODY

In her fourth issue, Carla argues that the trial court abused its discretion by awarding Wayne custody of K.L.R. because the same court awarded custody of K.L.R.'s half sibling to her.[5] Further, her argument continues, awarding custody of K.L.R. to Wayne split K.L.R.'s family unit.

An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citation to authorities and to the record. TEX.R.APP. P. 38.1(h). However, Carla's argument regarding custody of K.L.R.'s half sibling is brief and conclusory and contains no citations to authorities. Therefore, Carla has waived this issue. *See id.* However, even absent waiver, Carla's argument still fails.

K.L.R. and his sister are not children of the same marriage. Split custody of two or more children of the same marriage is a factor, among many, to consider in determining the best interest of a child. *MacDonald v. MacDonald*, 821 S.W.2d 458, 463 (Tex.App.-Houston [14th Dist.] 1992, no writ). Courts have traditionally applied the policy of keeping siblings together in custody decisions only to children of the same marriage. *In re D.R.L.M.*, 84 S.W.3d 281, 303 (Tex.App.-Fort Worth 2002, pet. denied) (citing *Pizzitola v. Pizzitola*, 748 S.W.2d 568, 569 (Tex.App.-Houston [1st Dist.] 1988, no writ)). Because K.L.R. and his sister are not children of the same marriage, the policy of keeping siblings together does not apply and, thus, the trial court did not abuse its discretion by awarding custody of K.L.R. to Wayne. Accordingly, Carla's fourth issue is overruled.

5. Carla had a daughter by a subsequent marriage.

## MODIFICATION OF THE PARENT-CHILD RELATIONSHIP

In her third, fifth, and seventh issues, Carla contends that the trial court abused its discretion by awarding custody of K.L.R. to Wayne.

### Applicable Law

A trial court's modification of conservatorship is reviewed for abuse of discretion. *In re P.M.B.*, 2 S.W.3d 618, 621 (Tex.App.-Houston [14th Dist.] 1999, no pet.). It is an abuse of discretion for a trial court to rule without supporting evidence. *Id.* The best interest of the child is the primary consideration in determining conservatorship or residency of a minor child. *Villasenor v. Villasenor*, 911 S.W.2d 411, 419 (Tex.App.-San Antonio 1995, no writ). As noted above, a trial court's findings of fact are binding on an appellate court unless they are so contrary to the great preponderance of the evidence as to show a clear abuse of discretion. *In re Ferguson*, 927 S.W.2d at 769. In the absence of such a clear abuse of discretion, an appellate court should not substitute its judgment for that of the trial court. *Id.*

As of September 1, 2001, section 156.101 of the Texas Family Code governs the grounds for modification of an order establishing conservatorship or possession and access. Act of May 22, 2001, 77th Leg., R.S., ch. 1289, § 5, 2001 Tex. Gen. Laws 3108, 3111 (codified at TEX. FAM.CODE ANN. § 156.101). According to section 156.101, the trial court may modify an order or portion of a decree that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if (1) modification would be in the best interest of the child and (2) the circumstances of the child, conservator, or other party affected by the order have materially and substantially changed since the date of the rendition of the order. TEX. FAM.CODE ANN. § 156.101. Whether there has been a material and substantial change of circumstances affecting the child is normally to be determined by an examination of the evidence of changed circumstances occurring between the date of the order or judgment sought to be modified and the date of the filing of the motion to modify. *Gibbs v. Greenwood*, 651 S.W.2d 377, 379 (Tex.App.-Austin 1983, no writ).

### Change of Circumstances

In her third issue, Carla argues that no change of circumstances existed at the time Wayne filed his 1998 motion to modify. Moreover, she contends that Wayne judicially admitted there was no change of circumstances when he filed the motion to modify. In her fifth issue, Carla contends that the trial court abused its discretion by first denying her visitation with K.L.R. and then using that court-ordered denial in finding a change of circumstances warranting a change of custody.

We first note that the trial court based its ruling on Wayne's second cross-petition, which superseded his 1998 motion to modify. In its findings of fact, the trial court pointed to a number of changed circumstances upon which it based its decision including, but not limited to the following: (1) Carla had numerous debilitating health problems that were serious enough at one time that her condition was considered terminal; (2) Carla had remarried, been divorced, and been through a modification proceeding before the trial court; (3) Carla had been arrested for one or more felony offenses that were pending at the time of trial; (4) Carla was arrested and incarcerated on one of the felony offenses on Friday, February 16, 2001, which was the beginning of a period of possession for Wayne, and

that precipitated presentation of the motion for an ex parte TRO to the trial court on February 20; (5) although Carla had notice of the March 5 hearing, she failed to appear and a default order was entered; (6) Carla took no action to alter the trial court's order granting possession of K.L.R. to Wayne from March 5, 2001 until March 12, 2002; (7) Carla was forced to move from her previous residence, lost that residence in legal proceedings, and moved to her current address without providing the notice required by the Texas Family Code; (8) although Wayne offered Carla supervised visitation with K.L.R., she refused to avail herself of the offered visitation from March 16, 2002 to September 9, 2002; (9) Carla's demeanor and trial conduct throughout the proceedings and trial was surly, sarcastic, and oppositional; and (10) K.L.R. is thriving in his current environment with Wayne. There is ample evidence in the record to support the trial court's findings.

Carla testified that her health had improved, although she still had an oxygen constraint. She also stated that she lived in a mobile home owned by her employer and was driving pickup trucks owned by her employer and her pastor. She testified that she had been on a leave of absence from Kyser Musical Products, Inc. since June 2002, but had weekly earnings of approximately $275 a week when she was working. After entry of the temporary orders, Carla was allowed supervised visitation with K.L.R. beginning June 16, 2001. However, Carla ceased her visitation after March 16, 2002. She further stated that she declined to visit K.L.R. under the conditions Wayne offered because his offer was "ludicrous." Finally, a number of witnesses testified that Carla was a good mother. The presence of this testimony in the record does not render the findings so contrary to the great preponderance of the evidence as to show a

clear abuse of discretion. *See In re Ferguson*, 927 S.W.2d at 769. Therefore, the findings are binding on us. *See id.* Consequently, we hold that the trial court did not abuse its discretion in granting Wayne's motion for modification and awarding custody of K.L.R. to Wayne.

### Best Interest of the Child

In her seventh issue, Carla argues that the trial court abused its discretion by awarding custody of K.L.R. to Wayne in light of the fact that (1) on October 21, 1999, he consumed alcohol and, later that same day, drove with K.L.R. in the vehicle; (2) in October 1999, he had sex with a previous wife and another woman when K.L.R. was in the house; (3) he admitted playing strip poker while minor children were in the house; and (4) criminal charges had been filed against him after October 1998. Moreover, she contends that Wayne had not paid child support for the six months prior to gaining temporary custody of K.L.R. Finally, Carla argues that she did not endanger K.L.R. or engage in improper conduct in K.L.R.'s presence.

Wayne testified that he did not believe he was behind in his child support. Wayne's admission of improper sexual behavior while K.L.R. was in the house is a factor in considering the best interest of the child. However, Wayne testified that the incidents of improper sexual behavior last occurred in 1999 and that the criminal charges against him were dropped and untrue. Further, the trial court could have considered the testimony of K.L.R.'s teachers and principal that K.L.R. had a good relationship with his father, that he performed well in school, and that he was happy and well-adjusted. Moreover, the trial court could have found Carla's lack of visitation before the final hearing and her changed circumstances noted above as fac-

tors when determining K.L.R.'s best interest. There is ample evidence in the record to support the trial court's finding that modification was in K.L.R.'s best interest. Although there was some evidence in the record that was favorable to Carla, the findings are not so contrary to the great preponderance of the evidence as to show a clear abuse of discretion. *See In re Ferguson,* 927 S.W.2d at 769. We therefore hold that the trial court did not abuse its discretion in finding that modification was in K.L.R.'s best interest. Accordingly, Carla's third, fourth, and seventh issues are overruled.

### DEVIATION FROM CHILD SUPPORT GUIDELINES

In her eighth issue, Carla contends that the trial court erred when it deviated from the child support guidelines in calculating Wayne's child support and subsequently failed to explain the deviation in its findings of fact and conclusions of law. Wayne argues that Carla's request for child support findings was not timely made. Even if Carla's request was timely, Wayne contends, the trial court directly applied the provisions of the Texas Family Code to its calculation of child support.

### *Applicable Law*

■ For purposes of determining child support liability, the trial court shall calculate net resources including all wage and salary income and other compensation for personal services, interest, dividends, and royalty income, self-employment income, net rental income, and all other income actually being received. TEX. FAM.CODE ANN. § 154.062(a), (b) (Vernon 2002). When multiple households are due child support, any child support received by an obligor shall be added to the obligor's net resources to compute the net resources before determining the child support credit or applying the percentages in the multiple household table. TEX. FAM.CODE ANN.

§ 154.070 (Vernon 2002). In rendering an order for child support, the trial court shall make findings if (a) a party files a written request with the trial court not later than ten days after the date of the hearing, (b) a party makes an oral request in open court during the hearing, or (c) the amount of child support ordered by the trial court varies from the amount computed by applying the percentage guidelines. TEX. FAM.CODE ANN. § 154.130(a) (Vernon 2002). A trial court's failure to make these findings upon a timely or proper request or variance constitutes reversible error. *Hanna v. Hanna,* 813 S.W.2d 626, 628 (Tex.App.-Houston [1st Dist.] 1991, no writ).

### *Analysis*

Based on the tax charts promulgated for computing net monthly income, Carla's gross monthly income of $1,200 results in a net monthly income of $1,049.45. *See* TEX. FAM.CODE ANN. § 154.061 (Vernon 2002). Additionally, the monthly child support of $360 that Carla receives from the father of her other child must be added to her net monthly income, for a total of $1,409.45 in net resources. After multiplying Carla's net resources of $1,409.45 by 17.50 percent, as required by the Family Code, the total amount of child support due from Carla is $246.50 per month. *See* TEX. FAM. CODE ANN. § 154.129 (Vernon 2002). However, there was also testimony that Carla had been on a leave of absence from Kyser Musical Products, Inc. since June 2002. She testified that when she was working at Kyser, she earned approximately $275 a week. If the trial court had considered Carla's future employment with Kyser, the amount of her gross monthly income would be $2,391.66, her net monthly income $1,977.65, and her net resources $2,337.65. Thus, her monthly child support obligation (multiplying $2,337.65 by 17.50 percent) would be $409.08. However, the trial

court ordered Carla to pay monthly child support in the amount of $250.

 The amount of Carla's child support calculated according to the child support guidelines, either $246.50 or $409.08 depending on whether the trial court considered her future income from Kyser, is a variance from the amount ordered by the trial court. Thus, the trial court was required, even without a timely and proper request by Carla, to make findings and state whether the application of the guidelines would be unjust or inappropriate. *See* TEX. FAM.CODE ANN. § 154.130(a), (b). By not making the findings required by section 154.130(a), the trial court prevented Carla from effectively contesting the court's deviation from the child support guidelines. *See Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex.1996). Therefore, the trial court abused its discretion. Accordingly, we sustain Carla's eighth issue.

## UNPAID CHILD SUPPORT

 In her tenth issue, Carla argues that the trial court erred by failing to enter judgment in her favor for Wayne's past due child support. Wayne contends that Carla never filed a motion for enforcement for contempt or sought a money judgment against him. Additionally, Wayne argues that the trial court, in effect, retroactively applied child support Carla would have owed to him and credited it to the amount he owed to her, essentially "washing out" the arrearage owed by each party.

 An appellate court reviews a trial court's decision regarding child support for an abuse of discretion. *In re Tucker*, 96 S.W.3d 662, 664 (Tex.App.-Texarkana 2003, no pet.). In a contempt proceeding or in rendering a money judgment, the trial court may not reduce or modify the amount of child support arrearages. TEX. FAM.CODE ANN. § 157.262(a) (Vernon 2002).

However, a money judgment for arrearages rendered by the trial court may be subject to a counterclaim or offset. TEX. FAM.CODE ANN. § 157.262(f) (Vernon 2002).

At the March 5 hearing on the TRO, the trial court abated Wayne's child support obligations as of March 1, 2001. Further, Wayne had possession of K.L.R. from March of 2001 through the final hearing in October of 2002. According to Wayne's testimony and the printout of child support payments from the Nacogdoches District Clerk, Wayne may have owed approximately six months of child support or $4,260. However, Wayne believed that he had paid all unpaid child support prior to March of 2001. In her amended original answer, Carla requested Wayne pay child support arrearages, and in open court at the final hearing, she asked for a judgment on Wayne's unpaid child support. In his amended cross-petitions, Wayne requested child support from Carla for the benefit of K.L.R. However, the trial court did not order Carla to pay child support, and she never voluntarily paid child support from March 2001 through October 2002. If she had been ordered to pay child support in the amount of $250 beginning in March of 2001, she would have owed approximately $4,750 by the final hearing.

The trial court found that neither party owed any arrearages on child support as of November 1, 2002. Nonetheless, the trial court appeared to offset Carla's claims for unpaid child support against Wayne's claims of child support from Carla. *See* TEX. FAM.CODE ANN. § 157.262(f). Because Carla's claim for unpaid child support against Wayne was offset by Wayne's claim for child support against Carla, the trial court did not abuse its discretion by denying Carla a judgment for unpaid child support from Wayne. Accordingly, Carla's tenth issue is overruled.

## ATTORNEY'S FEES

In an unnumbered issue, which we consider as Carla's thirteenth issue, Carla complains that the trial court abused its discretion by awarding attorney's fees to Wayne's attorney. In a suit affecting the parent-child relationship, the trial court may order reasonable attorney's fees as costs and order the fees to be paid directly to an attorney. TEX. FAM.CODE ANN. § 106.002(a) (Vernon 2002). Such an award is within the trial court's discretion. *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996). The record is clear that Carla and her attorneys delayed presenting Carla for a deposition and refused or delayed compliance with other orders for discovery that, according to the trial court, Wayne was entitled to receive. The trial court found that Carla and her attorneys were guilty of "dilatory tactics and refusal to submit to reasonable discovery," which greatly increased the costs of attorney's fees, expert fees, and litigation costs. The trial court also found that the fees charged by Wayne's attorney were reasonable. Because it found that Carla and her attorneys had delayed the case and failed to comply with court orders, the trial court did not abuse its discretion in awarding attorney's fees to Wayne's attorney. Accordingly, Carla's thirteenth issue is overruled.

## MOTION FOR NEW TRIAL

In her eleventh issue, Carla argues that the trial court abused its discretion by denying her amended motion for new trial after she presented newly-discovered evidence that Wayne was allowing K.L.R.'s teeth to deteriorate. Specifically, she contended that because of Wayne's neglect, K.L.R. had a "gaping hole" in his mouth with part of a tooth missing and several black spots on his back teeth. She had learned after taking K.L.R. to the dentist that he would need a tooth extracted, a spacer, and three fillings. She admitted, however, that Wayne had taken K.L.R. to the dentist, but stated that no work on his teeth had begun.

An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citation to authorities and to the record. TEX.R.APP. P. 38.1(h). However, Carla's argument is brief and conclusory and contains no citations to authorities. Therefore, Carla has waived this issue. *See id.*

Even absent waiver, we are unpersuaded. A new trial may be granted and judgment set aside for good cause, on motion or on the court's own motion. TEX.R. CIV. P. 320. The trial court's action on a motion for new trial is governed by an abuse of discretion standard. *Smith v. Levine*, 911 S.W.2d 427, 433 (Tex.App.-San Antonio 1995, writ denied). If there is a claim of newly-discovered evidence, the movant must bring forward non-cumulative evidence of which she did not become aware, and could not with the exercise of diligence have become aware, until after trial. *Id.* This newly-discovered evidence must be so material that it would probably produce a different result. *Id.* In other words, the newly-discovered evidence must strongly show that the original custody order would have a serious adverse effect on the interest and welfare of the child and that presentation of that evidence at another trial would probably change the result. *Gaines v. Baldwin*, 629 S.W.2d 81, 83 (Tex.App.-Dallas 1981, no writ). Carla's testimony that Wayne had neglected K.L.R.'s teeth would have been only one factor in the trial court's determination and, alone, not so material that presentation of this evidence at another trial would probably change the result. *See Smith*, 911 S.W.2d at 433; *Gaines*, 629 S.W.2d at 83. Therefore, the trial court did not

abuse its discretion by denying Carla's amended motion for new trial. *See Smith,* 911 S.W.2d at 433. Accordingly, Carla's eleventh issue is overruled.

### FAIR AND IMPARTIAL JUDGE

In her twelfth issue, Carla contends that she was denied a fair and impartial judge guaranteed by the Fourteenth Amendment to the United States Constitution. Carla argues that the trial judge was biased and prejudiced and, thus, she was denied a fair and impartial trial. Due process requires a neutral and detached hearing body or officer. *Earley v. State,* 855 S.W.2d 260, 262 (Tex.App.-Corpus Christi 1993), *writ dism'd, improvidently granted,* 872 S.W.2d 758 (Tex.Crim. App.1994) (citing *Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656 (1973)). In the absence of a clear showing to the contrary, we will presume the trial judge was a neutral and detached officer. *Id.* (citing *Fielding v. State,* 719 S.W.2d 361, 366 (Tex.App.-Dallas 1986, pet. ref'd)).

The record demonstrates that contrary to Carla's assertions of bias and prejudice against her, the trial judge was patient, attentive, and professional. At her deposition, Carla was sarcastic toward opposing counsel. Burress was present at the deposition, and Carla referred to her as a "court whore" and prostitute. She remained sarcastic toward opposing counsel during the hearing on the motion to modify. After the second day of the final hearing, the trial judge modified the temporary orders and granted Carla standard visitation without supervision. In fact, the trial judge stated that he was convinced that Carla did not need supervision while visiting K.L.R. and that he wanted the child to see Carla in natural surroundings.

When he announced the verdict in open court, the trial judge stated that Carla had caused the major part of the delay in bringing the case to trial, although he noted that Wayne and his attorney may have caused some delay. The trial judge also remarked that Carla's attitude and demeanor "clearly show[ed her] surly, sarcastic approach" toward the entire proceeding. Despite the judge's comments, he granted Carla standard visitation. Moreover, the trial judge remarked that he was disappointed in both parents, in their treatment toward each other, and the effect their conduct may have on K.L.R. In fact, the trial judge noted that, if he could, he probably would have given the child to someone else to raise.

Bias must come from an extrajudicial source and result in an opinion on the merits of the case other than what the trial judge learned from participation in the case. *See Grimes v. State,* 135 S.W.3d 803, 819 (Tex.App.-Houston [1st Dist.] 2004, no pet.). Although Carla states that the trial judge was biased, she does not identify any extrajudicial source that influenced the trial court's decision nor has she directed us to any evidence in the record from which we might conclude any such influence existed. Thus, in substance, she complains only of actions taken by the trial judge while acting in his judicial capacity at trial. Based upon our review of the record, we hold that Carla has failed to make a clear showing that the trial judge was biased or prejudiced and, thus, we must presume that the trial judge was a neutral and detached officer. *See Earley,* 855 S.W.2d at 262. Accordingly, Carla's twelfth issue is overruled.

### CONCLUSION

Having sustained Carla's eighth issue, we *reverse* the portion of the trial court's judgment ordering Carla to pay $250 per month in child support and *remand* to the trial court to render child support orders

in compliance with the statutory child support guidelines or issue findings explaining its variance. In all other respects, the trial court's *judgment* is *affirmed.*