**Opinion filed September 15, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00363-CV

_____

## IN THE INTEREST OF T.E.G., A CHILD

**On Appeal from the 29th District Court
Palo Pinto County, Texas
Trial Court Cause No. C47145**

## MEMORANDUM OPINION

This is an appeal from an order granting a petition to modify the parent-child relationship between T.E.G. and her parents. The father, C.E.G., appeals and presents three issues for our review. In his first two issues, C.E.G. challenges the sufficiency of the evidence. In his third issue, C.E.G. argues that the trial court erred by admitting evidence of his pending criminal charges. We affirm.

C.E.G. and L.E.G. are the parents of T.E.G. On December 5, 2011, the trial court in Harris County, Texas, entered a final decree of divorce dissolving their marriage. The divorce decree designated C.E.G. as the parent with the right to

determine the child's primary residence in Harris County and its contiguous counties. The divorce decree also allowed C.E.G. to designate T.E.G.'s primary residence outside of this geographic restriction if L.E.G. no longer resided in Harris County or its contiguous counties. When the divorce decree was rendered, L.E.G. lived in Kansas, and C.E.G. lived in Harris County. In November 2012, C.E.G. moved with T.E.G. into a house owned by C.E.G.'s mother in Mineral Wells, which is located in Palo Pinto County, Texas. In August 2013, L.E.G. moved to Fort Worth, Texas. In September 2015, C.E.G. moved to Spring, Texas, for a new job and left T.E.G. with his girlfriend, Nicole Belanger, in Mineral Wells so that T.E.G. could continue to go to school there. Belanger and T.E.G. eventually joined C.E.G. in Spring.

On January 29, 2016, L.E.G. filed a motion to transfer this suit to Palo Pinto County, as well as a Petition to Modify the Parent-Child Relationship. On April 26, 2016, C.E.G. filed a motion to enforce child support against L.E.G. On April 27, 2016, the trial court in Harris County granted L.E.G.'s motion to transfer the suit to Palo Pinto County. On May 17, 2016, L.E.G. filed a First Amended Petition to Modify the Parent-Child Relationship, in which she sought appointment as the person who had the right to designate the primary residence of T.E.G. within 100 miles of Palo Pinto County.

The trial court in Palo Pinto County considered L.E.G.'s first amended petition to modify the parent-child relationship at a bench trial conducted on August 17, 2016. At the hearing, L.E.G. testified that she amended her petition to seek primary conservatorship of T.E.G. because she had concerns about "[t]he stability of [T.E.G.] and some concerns with [C.E.G.'s] criminal background." L.E.G. testified that C.E.G. "is very quick to get a new job and uproot [T.E.G.'s] life" and that she wanted T.E.G. to have a more stable life. C.E.G. started a new job

in Houston on September 2, 2015. C.E.G. testified that he works from 12:00 p.m. to 10:00 p.m. five days a week and every other weekend. His job duties also require him to occasionally travel out of state. L.E.G. testified that Belanger was the person caring for T.E.G.'s needs in Spring. C.E.G. also testified that Belanger cared for T.E.G. in Mineral Wells after C.E.G. moved and that Belanger and her family often care for T.E.G. in Spring when he travels for work.

Additionally, L.E.G. introduced into evidence, over C.E.G.'s objections, three indictments charging C.E.G. with the third-degree felony of tampering with a governmental record, the second-degree felony of engaging in organized criminal activity, and a state-jail felony theft in Palo Pinto County. L.E.G. said that she was under the impression that Belanger, who helped care for T.E.G., was also indicted. L.E.G. testified that these pending criminal charges caused her to become concerned about C.E.G.'s ability to continue to care for T.E.G.

At the conclusion of the hearing, the trial court awarded L.E.G. the right to determine T.E.G.'s primary residence within 100 miles of Palo Pinto County and entered its final order on October 6, 2016. The trial court later issued findings of fact and conclusions of law, in which the court found that C.E.G. "works six days per week from 12:00 p.m[.] to 10:00 p.m. one week and five days per week from 12:00 p.m. to 10:00 p.m. the next week," while L.E.G. "works Monday through Friday from 8:30 a.m. to 5:30 p.m." The trial court also found that C.E.G.'s "current job requires that he travel at various times to Indiana and Wisconsin." The trial court also found that L.E.G. had observed that T.E.G. had "signs of emotional distress" after moving to Spring and that L.E.G. was concerned about "the lack of time" C.E.G. spends with T.E.G. "due to his work hours and responsibilities." Additionally, the trial court found that C.E.G. had been indicted for three separate offenses in Palo Pinto County and that Belanger was a codefendant. The trial court

concluded that L.E.G. "proved by a preponderance of the evidence that the circumstances of [T.E.G.], [L.E.G.], [C.E.G.] or other party affected by the prior order have materially and substantially changed since the date of rendition of the order to be modified." The trial court also concluded that L.E.G. "proved by a preponderance of the evidence that her requested modification was in the best interest of [T.E.G.]." Finally, the trial court concluded that L.E.G. "proved by a preponderance of the evidence that [L.E.G.] and [C.E.G.] should be named joint managing conservators of [T.E.G.] and that [L.E.G.] should have the exclusive right to designate the child's primary residence within 100 miles of Palo Pinto County, Texas."

C.E.G. challenges the sufficiency of the evidence supporting the trial court's decision to modify the conservatorship of T.E.G. A trial court may modify the terms and conditions of conservatorship if the circumstances of the child or a conservator have materially and substantially changed since the prior order and if the modification would be in the best interest of the child. TEX. FAM. CODE ANN. § 156.101(a)(1) (West 2014). C.E.G.'s first issue addresses the "material and substantial change" element, and his second issue addresses the "best interest of the child" element. *See id.*

A trial court has broad discretion to decide the best interest of a child in family law matters such as custody, visitation, and possession. Accordingly, we review a decision to modify conservatorship for a clear abuse of that discretion. *In re A.J.E.*, 372 S.W.3d 696, 698 (Tex. App.—Eastland 2012, no pet.); *see Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). A trial court abuses its discretion when it acts arbitrarily or unreasonably or when it fails to correctly analyze or apply the law. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). In any

case involving an issue of conservatorship, the best interest of the child must always be the primary consideration of the trial court. FAM. § 153.002.

Under the abuse of discretion standard, issues relating to the legal and factual sufficiency of the evidence are not independent grounds of error, but only factors used to assess whether the trial court abused its discretion. *A.J.E.*, 372 S.W.3d at 698. To determine whether an abuse of discretion has occurred because the evidence is legally or factually insufficient to support the trial court's decision, we must inquire as follows: (1) Did the trial court have sufficient information upon which to exercise its discretion? (2) Did the trial court err in its substantive and probative character to support its decision? *Id.* at 699.

C.E.G. contends that L.E.G. did not present sufficient evidence to establish that there had been a material and substantial change in circumstances since the time of trial. C.E.G. argues that, because the original divorce decree allowed him to move T.E.G. anywhere within Harris County and contiguous counties, or anywhere if L.E.G. moved, there could not have been a material change in circumstances. However, L.E.G. presented other evidence of material and substantial change at trial that the court found to be true. L.E.G. presented evidence that C.E.G. and Belanger, upon whom C.E.G. relied heavily to care for T.E.G., were both facing multiple criminal charges. L.E.G. also presented evidence that C.E.G.'s new job required him to be away from home for substantial periods of time and that he worked long hours. Although C.E.G. argues that the trial court based its decision "solely on the fact [C.E.G.'s] family lived in Palo Pinto County," we note that a trial judge's oral statements are not a substitute for findings of fact and conclusions of law. *See In re W.E.R.*, 669 S.W.2d 716 (Tex. 1984); *Tate v. Tate*, 55 S.W.3d 1, 7 n.4 (Tex. App.—El Paso 2000, no pet.). Moreover, the evidence indicated that T.E.G. was close to her family in Mineral Wells. The trial court's findings of fact indicate that there

5

were factors other than C.E.G.'s and T.E.G.'s move to Spring that weighed in favor of the trial court's order. We conclude that the trial court did not abuse its discretion when it found that there was a material and substantial change in circumstances. We overrule C.E.G.'s first issue.

C.E.G. directs his second issue at the trial court's best interest finding. We review a trial court's best interest finding in conservatorship proceedings by using the *Holley* factors. *In re M.C.M.*, No. 11-13-00375-CV, 2014 WL 3698283, at *5 (Tex. App.—Eastland July 17, 2014, no pet.) (mem. op.); *see Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These non-exhaustive factors include (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the plans for the child by these individuals, (6) the stability of the home, (7) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (8) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371–72.

Although the evidence in the record does not address all of these factors, C.E.G.'s decision to move T.E.G. to the Houston area, his job, and his and Belanger's pending indictments were all factors relevant to the trial court's best interest finding. This evidence indicated an impact on T.E.G.'s emotional and physical needs under the second factor. The evidence was also relevant to C.E.G.'s parental abilities, the long-term plan for T.E.G., and the stability of the home, all of which fall under factors four through six. Conversely, L.E.G. testified that she has stable work hours and that she is able to provide a home for L.E.G., drop her off at school every day, and pick her up from school every day. After reviewing the entire record and considering all of the evidence, we cannot conclude that the trial

court's best interest determination constituted an abuse of discretion because there was some evidence of a substantive and probative character to support its decision. *See A.J.E*, 372 S.W.3d at 699. We overrule C.E.G.'s second issue.

In his third issue, C.E.G. argues that the trial court erred when it allowed L.E.G. to introduce as evidence his indictments for theft, tampering with a governmental record, and engaging in organized criminal activity. At trial, C.E.G. objected to the admission of the indictments on the basis that they were not relevant. *See* TEX. R. EVID. 401, 402; *see also* TEX. R. EVID. 404(b). The trial court overruled the objections as to all three indictments. On appeal, C.E.G. argues that the evidence related to his pending criminal charges was prejudicial,[1] constituted improper character evidence, and was irrelevant because the charges were pending and had not resulted in a conviction.

Evidence is relevant if it has "any tendency to make a fact more or less probable that it would be without the evidence" and "the fact is of consequence in determining the action." TEX. R. EVID. 401. Rule 402 provides that relevant evidence is admissible. Evidence that C.E.G. had been indicted for three felonies was relevant to determining C.E.G.'s changed circumstances, parenting abilities, and the stability of the home that C.E.G. could provide for T.E.G. *See In re K.L.R.*, 162 S.W.3d 291, 305–06 (Tex. App.—Tyler 2005, no pet.) (citing *In re M.R.*, 965 S.W.2d 51, 55 (Tex. App.—San Antonio 1998, pet. denied)). The evidence was not offered for purposes of character conformity; it was relevant to the issues of whether circumstances had materially changed and whether modification of the parent-child relationship would be in T.E.G.'s best interest. *Id.*; *see* TEX. R. EVID. 404(b). Additionally, a conviction is not a prerequisite to admitting such evidence under

---

[1] We note that C.E.G. has not preserved a Rule 403 complaint: he did not object at trial that the evidence was unduly prejudicial, nor did he mention Rule 403. *See* TEX. R. EVID. 403; TEX. R. APP. P. 33.1.

these circumstances.  *See K.L.R.*, 162 S.W.3d at 305.  We hold that the trial court did not abuse its discretion when it admitted evidence of C.E.G.'s pending criminal charges.  We overrule C.E.G.'s third issue.

We affirm the order of the trial court.


PER CURIAM


September 15, 2017

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.