

# NUMBER 13-13-00411-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

KB REALTRON MANAGEMENT,                                         Appellant,

v.

STEPHANIE DELEON,                                              Appellee.

**On appeal from the County Court at Law No. 1
of Travis County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Longoria
Memorandum Opinion by Justice Rodriguez**

Appellant KB Realtron Management (KB Realtron) appeals from a judgment

entered against it and in favor of appellee Stephanie DeLeon in a forcible detainer action.

By three issues, KB Realtron contends: (1) it "prove[d] that [it] was entitled to the relief

requested"; (2) "the presiding judge violate[d] canons of the Texas Code of Judicial Conduct"; and (3) KB Realtron was "denied due process by a judge who was biased and prejudiced" and who did not recuse himself.   We affirm.[1]

## I.   BACKGROUND

KB Realtron filed a forcible detainer suit against DeLeon in justice court, claiming that it was the landlord of the property at 3305 Spaniel Drive, Austin, Texas (the property), and that DeLeon had not paid either her security deposit or her monthly rent from December 2011 through mid-April 2012.[2]   *See* TEX. PROP. CODE ANN. § 24.004 (West, Westlaw through 2015 R.S.); TEX. GOV'T CODE ANN. § 27.031(a)(2) (West, Westlaw through 2015 R.S.).   DeLeon filed a motion to dismiss.   On February 2, 2012, the justice court entered an order granting DeLeon's motion and dismissing KB Realtron's forcible detainer claim with prejudice.

On February 7, 2012, KB Realtron appealed to the county court for a de novo review of the justice court's February 2 order.   *See Black v. Washington Mut. Bank*, 318 S.W.3d 414, 416–17 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).   DeLeon filed her motion to dismiss in the county court on April 11, 2012.   On March 5, 2013, KB Realtron filed a motion for possession of property and recovery of unpaid rent.   An affidavit, signed by Kevin Bierwirth, owner of KB Realtron, was attached.   And on June 10, 2013, after a trial de novo, the county court entered judgment, concluding that it "was

---

[1] This case is before the Court on transfer from the Third Court of Appeals in Austin pursuant to an order issued by the Supreme Court of Texas.   *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.).

[2] DeLeon did not file a brief to assist us in the disposition of this case.

2

of the opinion that the evidence failed to show that [KB Realtron] should recover from [DeLeon]." This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By its first issue, KB Realtron asks, "Did appellant prove that [it] was entitled to the relief requested?" KB Realtron's argument follows in its entirety:

> At trial, [KB Realtron] provided evidence that [DeLeon] had signed a lease, [DeLeon] had occupied the property for close to four months and [DeLeon] had paid no consideration whatsoever, an obvious breach of the contract.

> [KB Realtron] provided the [c]ourt with the amount due and owing on the contract.

> [KB Realtron] proved to the [c]ourt that he was entitled to the relief requested.

KB Realtron does not develop its contentions for this issue, which we construe as a sufficiency-of-the-evidence issue. In its argument section, KB Realtron provides no further explanatory argument addressing the elements of its claim or the evidence that it claims supports the elements. *See* TEX. R. APP. P. 38.1(i). It provides no citation or reference to the trial record for any fact allegedly supporting its argument.[3] *See id.* And it provides no citation or reference to supporting authority. *See id.* Without more, we conclude that this issue is inadequately briefed. *See id.* We overrule KB Realtron's first issue.

## III. BIAS AND PREJUDICE

By its second and third issues, KB Realtron complains that the Honorable J. David

---

[3] Although KB Realtron provides some, but not all, record citations to support its statement of facts, it provides no record citations in the argument section of its brief.

Phillips, judge of the County Court at Law No. 1 of Travis County, "after being presented with the evidence of a lease and the testimony of a breach of that lease, denied [it] due process by sanctioning the conduct of the tortfeasor." KB Realtron argues that "Judge Phillips made it clear that [DeLeon] could breach the contract and not be held liable because she had leased a property from a man that Judge Phillips personally reviled." It contends that "Judge Phillips['s] conduct was intentional and willful and resulted in an unfair ruling which damaged [KB Realtron]." KB Realtron claims that "[i]t is evident from the transcript of this trial that Judge Phillips held absolute enmity and contempt for [KB Realtron] from the beginning to the end of the hearing." KB Realtron concludes with the following: KB Realtron "filed in the [c]ourt for due process, believing that, even though [KB Realtron] had been previously exposed to Judge Phillips'[s] extreme rancor, [KB Realtron] would nevertheless receive the benefit of the law. Instead, Judge Phillips denied [KB Realtron its] remedy and is [sic] so doing, threw due process out the window."

## A. Challenged Portions of the Court Proceeding

As owner of KB Realtron, Bierwirth testified in the county court. KB Realtron complains of the following exchange between Bierwirth and Judge Phillips during Bierwirth's direct testimony:

| Bierwirth: | [Regarding DeLeon's replacement of a deposit check that Bierwirth lost,] . . . [a]ccording to my bank, she was missing numbers or she didn't do it properly or whatever, and my bank felt like she was doing it purposely. |
|---|---|
| Court: | Your bank felt like it was purposely? |
| Bierwirth: | I have a letter— |

4

Court: If I go kick your bank, is it going to say ouch?

Bierwirth: I'm sure they will. I have a letter here saying—that I will put as evidence. And that was just for the deposit only.

Court: So where does it say your bank feels like it was being done purposely?

Bierwirth: Well, I thought it was in that letter.

Court: The truth, please. The truth.

Bierwirth: The credit transaction amount—okay.

Court: Not there.

Bierwirth: My mistake. They just said it was invalid account numbers, HCHR transaction code, which I don't know what that means. Unless it was not getting through electronically.

Court: Right.

. . . .

Court: Will you just tell me the story why she owes you money, please?

Bierwirth: For nonpayment of rents.

Court: How much? How much rent did she not pay?

Bierwirth: From—

Court: It's very entertaining to have to drag everything out of you, but it's a waste of time.

Bierwirth: I'm sorry. From December 16th to—it looks like to 4-1-2012.

Court: What happened on 4-1-2012?

Bierwirth: 4-1-2012 she—actually let me—I have some notes that

5

|  |  |
|---|---|
|  | I can track.  She moved out without notice to me—without written notice, and I believe that was sometime a little after April.  But when I had discovered she moved out in April, we went in and cleaned up the property and had it painted. |
| Court: | So you're only asking for rent April 1st, which is when she vacated? |
| Bierwirth: | From December to April 11th, yes, sir.  And I don't know if we can— |
| Court: | Do you have a copy of the lease? |
| Bierwirth: | Yes, sir, I do. |
| Court: | Do you want to put it into evidence? |
| Bierwirth: | Yes, sir. |

KB Realtron also complains of the following comments made by Judge Phillips during Bierwirth's cross-examination of DeLeon:

|  |  |
|---|---|
| Q. [Bierwirth] | And that is a legal binding contract.  You're aware of that, correct? |
| A. [DeLeon] | I'm not aware, no. |
| Q. | Didn't you state in Ms. Triana's court that it was, in fact, a legal—you understood it was a legal binding contract? |
| A. | I understand that leases are legal binding contracts. |
| Bierwirth: | Nonresponsive, Your Honor. |
| Court: | Would you let her answer it— |
| Bierwirth: | She's not answering it. |
| Court: | —before you start talking?  She said she understands that leases are legal binding contracts. |

6

| | |
|---|---|
| Bierwirth: | Okay. |
| Court: | You're trying to fool me or what? |
| Bierwirth: | No, sir, I'm just trying to— |
| Court: | I know what her answer is.   Her answer is, she thought it was a legal contract when she signed it. |

. . . .

Q.	Okay. Isn't it true that you filed a motion for summary judgment and the judge had ruled that I did have a right to the property and I did have a right to collect the monies for the property, and whether it was foreclosed or not, as long as I had possession of the property?

A.	The judge—there were some rulings, yes.   I'm not familiar.   I have to reread all the documents.

At the end of DeLeon's testimony, the following exchange occurred:

| | |
|---|---|
| Court: | Any other evidence for your side, Mr. Bierwirth? |
| Bierwirth: | Well, I'd like to put in that order here—actually, I believe here it is. Put in the order denying the summary judgment. |
| Court: | Orders denying motion for summary judgment don't say anything other than the motion is denied. |
| Bierwirth: | Okay. Well, I have the summary judgment as well if you would like to read it if it interests you. |
| Court: | Denied. It doesn't mean the judge agreed with you. Just some fault in the motion. |
| Bierwirth: | Yes, sir. |
| Court: | All right.   Anything else? |
| DeLeon: | No, Your Honor. |

7

Court:      Okay. I am reminded of an old Woody Guthrie song called "Pretty Boy Floyd", by golly. Pretty Boy Floyd was kind of a hero in Oklahoma because he robbed banks, and banks were kind of mean to people at that time. Part of the song says, "As through this world you travel, you see some funny men. Some will rob you with a six-gun and some with a fountain pen." Ain't that the truth.

And you're one of them, Mr. Bierwirth. How dare you rent something to somebody when it's been foreclosed on and you've already given a deed to the bank? How dare you?

Bierwirth:  I didn't. They have not—I still have possession of the property, and they have not tried—

Court:      You don't have possession of the property. Judge Cooper wrote an order that says this order will act as writ of possession for the property for the bank and that bank has now transferred it to somebody else, to the FDIC or Fannie May or somebody.

Bierwirth:  No, sir.

Court:      And you pretend that you have the right to possession of the property?

Bierwirth:  I do have a right to possession of the property.

Court:      Because it's been foreclosed on and transferred to two other banks and your right to possession is?

Bierwirth:  It hasn't been transferred, Your Honor. And I have—

Court:      Well, according to the deed records it has.

Bierwirth:  Your Honor, I have—I have a book like this. And when Ms. DeLeon rented the property, the bank was in litigation, as I told her before she moved in. And I also told her that they haven't gotten possession, nor did they file for possession or anything.

8

Court:                    I think you're a liar and a thief.   Just to get that off my chest. I think you're a liar and a thief.   And she gets judgment in this case, and I assess all cost against you. You can be excused.

**B.      Canons of Judicial Conduct**

KB Realtron first argues that Judge Phillips violated Canons 1 and 2(A) of the Texas Code of Judicial Conduct.   *See* TEX. CODE OF JUD. CONDUCT, Canons 1 & 2(A), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B (West, Westlaw current with amendments received through June 1, 2015).   KB Realtron suggests that a violation of the standards set out in these canons establishes impartiality and bias.    More specifically, KB Realtron claims that such violations establish that Judge Phillips had a bias or prejudice concerning KB Realtron or that he has personal knowledge of facts concerning previous litigation that create bias or prejudice.

Canon 1 of the Texas Code of Judicial Conduct provides, in part, the following: "An independent and honorable judiciary is indispensable to justice in our society.   A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and should personally observe those standards so that the integrity and independence of the judiciary is preserved."   *Id.* Canon 1.   In other words, Canon 1 sets forth the standards that apply to a judge in preserving the integrity and independence of the judiciary.   *See id.*   Canon 2(A) provides that "[a] judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."   *Id.* Canon 2(A).

However, Canon 8(A) describes the construction of the code as follows:

9

The Code of Judicial Conduct is intended to establish basic standards for ethical conduct of judges. It consists of specific rules set forth in Sections under broad captions called Canons.

The Sections are rules of reason, which should be applied consistent with constitutional requirements, statutes, other court rules and decisional law and in the context of all relevant circumstances. The Code is to be construed so as not to impinge on the essential independence of judges in making judicial decisions.

The Code is designed to provide guidance to judges and candidates for judicial office and to provide a structure for regulating conduct through the State Commission on Judicial Conduct. It is not designed or intended as a basis for civil liability or criminal prosecution. Furthermore, the purpose of the Code would be subverted if the Code were invoked by lawyers for mere tactical advantage in a proceeding.

It is not intended, however, that every transgression will result in disciplinary action. Whether disciplinary action is appropriate, and the degree of discipline to be imposed, should be determined through a reasonable and reasoned application of the test and should depend on such factors as the seriousness of the transgression, whether there is a pattern of improper activity and the effect of the improper activity on others or on the judicial system.

*Id.* Canon 8(A). Pursuant to Canon 8, a disciplinary action is the proper course to pursue when claiming that a judge has violated one of the canons of judicial conduct.[4] *See id.; see also Ludlow v. DeBerry*, 959 S.W.2d 265, 270 (Tex. App.—Houston [14th Dist.] 1997, no writ) ("[A] judge may be disciplined for violating one of these rules, but a violation does not necessarily mean that the judge should be recused."). Although we do not condone

---

[4] KB Realtron also relies on *In re Thoma* for the proposition that, "[i]t is axiomatic that an independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should observe high standards of conduct so that the integrity and independence of the judiciary is preserved." 873 S.W.2d 477, 496 (Tex. 1994) (citing TEX. CODE OF JUD. CONDUCT, Canon 1, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. B (West, Westlaw current with amendments received through June 1, 2015)). However, *In re Thoma* is an appeal from a judicial disciplinary proceeding, *see id.* at 482, and provides no support for KB Realtron's argument that the judgment rendered by Judge Phillips is invalid.

Judge Phillips telling Bierwirth that he was a "liar and a thief" and reciting lyrics from "Pretty Boy Floyd" about robbing someone with a fountain pen, to the extent KB Realtron's appellate arguments regarding bias and prejudice are based on alleged violations of the judicial code of conduct, we conclude that they fail.

Furthermore, "[g]enerally, Texas law imputes good faith to a trial judge's judicial actions in controlling a trial." *In re Commitment of Barbee*, 192 S.W.3d 835, 847 (Tex. App.—Beaumont 2006, no pet.). And after examining the remaining comments from the context of the entire record, *see id.* at 848, we conclude that Judge Phillips was attempting "to control the disposition of [this case] with economy of time and effort." *In re Commitment of Anderson*, 392 S.W.3d 878, 885 (Tex. App.—Beaumont 2013, pet. denied). Finally, while KB Realtron claims that the remarks made by Judge Phillips reflected an "acerbic attitude and demeanor," the Supreme Court and the Texas Supreme Court have set out that "'judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (per curiam) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

## C.     Recusal

KB Realtron also contends that the judge should have recused himself in this case. Specifically, KB Realtron claims that,

> It was further obvious that because of his personal disdain for [KB Realtron], Judge Phillips, in order to maintain the integrity of the [c]ourt, should have recused himself. Instead, Judge Phillips used the [c]ourt to vilify, embarrass and further torture [KB Realtron]. [KB Realtron] asserts the rationale behind Judge Phillips enmity was based on circulating rumors and previous litigation.

11

Texas Rule of Civil Procedure 18b(b) requires recusal when, among other things, a "judge's impartiality might reasonably be questioned" or a "judge has a personal bias or prejudice concerning the subject matter or a party." TEX. R. CIV. P. 18b(b). But Rule 18a mandates that a verified motion to recuse the judge before whom a case is pending must be filed at least ten days before the date set for trial or other hearing. *Id.* R. 18a. A trial judge is not obligated to recuse or refer a motion until a party has filed a formal timely, written, and verified motion to recuse. *Barron v. State of Tex. Att'y Gen.*, 108 S.W.3d 379, 383 (Tex. App.—Tyler 2003, no pet.); *see Spiegner v. Wallis*, 80 S.W.3d 174, 180 (Tex. App.—Waco 2002, no pet.) (collecting cases holding that the trial court's obligation to recuse himself or refer the motion is not implicated unless a formal timely, written, and verified recusal motion is filed); *see also Black v. 7-Eleven Convenience Stores*, Nos. 03-12-00014-CV & 03-12-00015-CV, 2014 WL 902498, at *3 (Tex. App.—Austin Mar. 7, 2014, no pet.) (mem. op.) (same). In this case, KB Realtron did not file a timely, verified, written motion to recuse. *See* TEX. R. CIV. P. 18a. So it has waived any arguments related to recusal. *See id.*

Moreover, even had KB Realtron filed a motion to recuse that was denied, we would not conclude that the trial court abused its discretion in doing so. *See id.* R. 18a(j) (setting out that the review of such an order is for an abuse of discretion). "Bias must come from an extrajudicial source and result in an opinion on the merits of the case other than what the trial judge learned from participation in the case." *In re K.L.R.*, 162 S.W.3d 291, 312 (Tex. App.—Tyler 2005, no pet.). Although KB Realtron asserts that the rationale behind Judge Phillips actions was based on circulating rumors and previous

12

litigation, there is no evidence in this record to support such allegations; KB Realtron failed to establish that Judge Phillips's alleged biases arose from an extrajudicial source. *See id.* We would conclude that Judge Phillips did not abuse his discretion when he did not recuse himself.

**D.    Summary**

Having determined that KB Realtron's arguments addressing violations of the judicial canons and recusal either fail or were waived, we overrule its second and third issues.

## IV.    CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ<br>
Justice

Delivered and filed the
19th day of November, 2015.

13